**PHILLIPS CHEMICAL COMPANY, Appellant,**

v.

**C. E. HULBERT, Jr., Appellee.**

**No. 19220.**

United States Court of Appeals
Fifth Circuit.

April 27, 1962.

Rehearing Denied June 5, 1962.

C. J. Roberts, Amarillo, Tex., Wm. J. Zeman, Lloyd G. Minter, Bartlesville, Okl., John R. Rebman, Amarillo, Tex., for appellant, Phillips Chemical Co.

Jerome W. Johnson, Amarillo, Tex., for appellee, C. E. Hulbert, Jr., Underwood, Wilson, Sutton, Heare & Berry, Amarillo, Tex., of counsel.

Before TUTTLE, Chief Judge, and HUTCHESON and WISDOM, Circuit Judges.

TUTTLE, Chief Judge.

This is an appeal by Phillips Chemical Company from a judgment entered upon a jury verdict awarding Hulbert $55,000 damages on the theory that Phillips maliciously interfered with Hulbert's business relations. The primary contentions of the appellant are that the action was barred by limitations and that the jury's verdict is not supported by the evidence of record. It is also contended that the trial court erred in the manner he submitted the question of "malice" to the jury.

This suit had its origin in two contracts between Phillips and Hulbert wherein Hulbert, an industrial painting contractor, agreed to paint certain facilities owned by Phillips in Texas. Hulbert was able to secure financing from the Panhandle State Bank in Borger, Texas. As part of the financing arrangement, Phillips agreed to make periodic two week payments directly to the bank based on its estimate of the work completed by Hulbert.

Shortly after work was commenced, Phillips' inspectors in charge of the painting operation complained to Hulbert about various skips and voids in the painting. Hulbert maintained that the trouble was due to bad paint, bad weather and chemical contamination. The inspectors insisted that the skips and voids were the results of Hulbert's poor workmanship, and they required Hulbert to use additional labor and materials to remedy the defects. Hulbert complained that the inspectors were making unreasonable demands, and he requested Phillips to reimburse him for his additional expenditures. Phillips refused. After about 25% of the job had been completed, a stalemate was reached, and the job was shut down by Hulbert with Phillips' consent so that the paint's covering ability could be tested.

While the work was suspended, Hulbert reasserted his claim for additional compensation. Hulbert indicated that he would be in serious financial difficulties if his claim was not paid, and he stated that he was willing to return to work if Phillips would meet his demands. Phillips advised Hulbert that it would make a decision after an appraisal of Hulbert's performance up to the date of suspension.

A few days later, Hulbert learned that Phillips had asked for bids on the completion of the paint job. He immediately contacted two of Phillips' representatives who apparently reassured him that he still had the contracts and that the bidding was merely being used to establish a basis for settling his claim for additional compensation. Since the time for completion of performance under the contracts was to run out the following day, Hulbert told these representatives that he was requesting an extension of time to complete the job. They responded by telling Hulbert to mail a written request for an extension to Phillips' main office. Hulbert immediately complied.

Two days later, the same representatives visited one Grimes, of the Panhandle State Bank, and conferred with him with respect to the status of Hulbert's contracts. Immediately after this conference, Hulbert received the following letter from Grimes:

"Dear Mr. Hulbert:

"We have been informed by official of the Phillips * * * Company that you have terminated your contract with them several days ago. As you well know we have made you advance on this work with the expectation that you would fulfill your contract.

"We were informed that you only completed 25% of the work, and that they have paid you some $6700.00. We ask that you call at once and take care of this indebtedness; also your note in the amount of $28,-356.00 which was due May 1st."

After receiving this letter, Hulbert wrote Phillips and requested it to notify Grimes that the contracts had not been terminated. A copy of this letter was sent to Grimes. Phillips' reply letter, a copy of which was also mailed to Grimes, notified Hulbert that his claim for additional compensation had been denied, but that he could complete the job if he desired. It is undisputed that, after Grimes' conversation with Phillips' representatives, Hulbert was unable to procure further credit from the Panhandle State Bank, and that, as a result thereof, Hulbert's business suffered a severe decline. Phillips sought to prove that it did not tell Grimes that Hulbert had "terminated" the contract, and also sought to prove by Grimes that the conversation was not the cause of shutting off Hulbert's credit. Although Hulbert eventually completed performance under the contracts with the appellant, he was able to do so only by selling certain of his assets at a substantial loss.

After completing performance under the contracts, Hulbert brought this suit against the appellant to recover (1) the additional compensation which appellant had refused to pay and (2) damages, based on the theory that appellant's representatives induced the Panhandle State Bank to refuse to extend him further credit by falsely and maliciously telling Grimes that he had abandoned his contracts with the appellant.

The case was submitted to the jury on the basis of a general charge and certain special interrogatories. The general charge with respect to the cause of action for interference with business relations informed the jury that Hulbert could recover if it were found that appellant's representatives who spoke to Grimes "acted with malice or gross indifference to the consequences." The following special interrogatory, which had been submitted by the appellant, was also read to the jury:

"Do you find from a preponderance of the evidence that the statements made by the defendant's representatives to R. L. Grimes concerning the plaintiff were made with malice toward the plaintiff?

"As used in the foregoing issue, you are instructed that the term 'malice' means ill will, bad or evil motive or such gross indifference to the rights of others as will amount to a wilful or wanton act."

The jury then returned a general verdict for Hulbert on the cause of action for interference with business relations.[1] However, when the court asked the jury for its verdict on the special issue of malice, it was discovered that the document containing this issue had not been sent out with the jury but had inadvertently been left among other papers lying on the court bench. The court thereupon sent the jury back to make a finding on the special issue of malice. The jury's verdict on this issue was that the statements made to Grimes were *not* made with malice toward the appellee. When the inconsistency between this special verdict and the general verdict was brought to the court's attention, the court again sent the jury back, this time to reconsider its entire verdict. Shortly thereafter, the jury returned to open court, reasserted a general verdict for the appellee, and announced its special finding that the statements to Grimes *were* made with malice. The appellant thence moved for a new trial on the ground that it had been seriously prejudiced by the manner in which the special issue of malice had been handled. This motion was overruled. Also overruled was appellant's motion for judgment notwithstanding the verdict on the grounds (1) that the action was barred by limitations and (2) that there was insufficient evidence to support the jury's verdict as to the issues of falsity, causation and malice.

We are of the opinion that, under the circumstances as set out above, the District Court erred in denying the appellant's motion for a new trial.

■ It is settled law in Texas that an action for interference with business relations will not lie unless the interference is motivated by malice. Thus it has been said that "the motive must determine the lawfulness of the act." Griffin v. Palatine Ins. Co., Tex.Com.App., 235 S.W. 202, 205. It is apparent, therefore, that the issue of malice was a significant, if not the most significant, issue in this case. When viewed in this light, it becomes clear that the appellant was seriously prejudiced by the manner in which the issue of malice was presented to the jury.

As indicated above, the jury was first instructed, as part of the court's general charge, that appellant would be liable if it were found that appellant's representatives "acted with malice or gross indifference to the consequences." No definition of "malice" was given. The appellant then submitted a special issue on malice together with the legal definition of that term. The special issue and definition were read to the jury, and the jury was told that this special issue "is on a footing with any other issue in the Court's charge." Through some oversight, however, the special interrogatory on malice was not submitted to the jury. As a result, the all important issue of malice was necessarily de-emphasized in the minds of the jurors. Having first been told that a special interrogatory on malice would be submitted for their consideration, and finding, upon their retiring to the jury room, that an interrogatory on malice had not been submitted to them, the jurors may well have thought that the issue of malice was not a significant issue in the case. In any event, the possibility of the jury receiving such an impression being so real, and the consequences of such an impression being so detrimental to the appellant's case, we cannot conclude that the appellant has had the fair trial it is entitled to.

The jury reached its general verdict for the appellee without the benefit of the special interrogatory which would have brought the important issue of malice

1. The appellee also recovered a verdict for $5,000 on his claim for additional compensation. Phillips does not contest that verdict and it is thus irrelevant to this appeal.

into sharp focus. Considerable time and energy went into this general verdict. After the inadvertent omission was discovered, the jury was sent back to consider the issue of malice alone. It concluded that there was no malice. However, having thereafter been informed by the court that this special answer could not stand with its hard wrought general verdict, no imagination was required to predict that the jury would likely change its answer to the interrogatory rather than see its general verdict fall.

■ Under Rule 49(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., a trial court, upon discovering an inconsistency between a general verdict and a special verdict, can attempt to have the inconsistency remedied in any of three ways. The court can direct the entry of judgment on the special verdict, order a new trial, or return the jury for further deliberation. Ordinarily, it is discretionary with the court as to which of these alternatives is pursued. Welch v. Bauer, 5 Cir., 186 F.2d 1002. However, this discretion must be exercised in light of the circumstances under which the inconsistency arises. In the instant case, it was improper to return the jury for further consideration because the jury had been rendered incapable of fairly resolving the inconsistency due to the fact that it had reached its general verdict without any consideration whatever of the special interrogatory on malice.

■ Another important consideration here is that the appellee's evidence on the issue of malice was quite weak. The Texas cases make clear that malice cannot be lightly inferred, but must be proven by convincing evidence. See e. g., International G. N. Ry. Co. v. Edmundson, Tex.Com.App., 222 S.W. 181; Foley Bros. Dry Goods Co. v. McClain, Tex.Civ.App., 231 S.W. 459. Although we do not decide here whether or not the evidence was sufficient to support the jury's verdict on the issue of malice, the insubstantiality of the evidence makes it even more clear that appellant was prejudiced by the failure to submit the special interrogatory to the jury when it first retired to deliberate on a verdict. Though the error was accidental, it deprived the appellant of a substantial right. Under these peculiar circumstances, we think the appellant is entitled to a new trial.

■ Since there is no telling the quality or quantity of the evidence which will be presented by the parties at the new trial, we find it unnecessary to determine whether the evidence introduced below otherwise supports the jury's verdict. As to the question of limitations, we are of the opinion that the four year statute applicable to actions for interference with business relations would be applicable to this case if the appellee is able to prove that the appellant *maliciously* sought to, and *did in fact, induce* the bank to cut off the appellee's supply of credit by uttering a falsehood to Grimes. Brown v. American Freehold Land Mtg. Co., 97 Tex. 599, 80 S.W. 985.

The judgment is reversed and the cause is remanded to the District Court with instructions to grant a new trial.