**STATE of Iowa, Appellee,**

v.

**Gary Dean MUMFORD, Appellant.**

No. 69325.

Supreme Court of Iowa.

Sept. 21, 1983.

Amy Christensen Couch and Terry Wright, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Roxann M. Ryan, Asst. Atty. Gen., Dan Johnston, County Atty., and Dominic Corsello, Asst. County Atty., for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, SCHULTZ, and CARTER, JJ.

CARTER, Justice.

Defendant Gary Dean Mumford appeals from judgment and sentence imposed following conviction by jury trial of the offense of first-degree robbery defined in Iowa Code sections 711.1, 711.2 (1981). He asserts that the trial court erred by not accepting the form of verdict and answers to interrogatories initially returned by the jury as a finding of second-degree robbery and by permitting further jury deliberations which led to a finding of first-degree robbery. We consider these contentions and affirm the judgment of the trial court.

Mumford and a co-defendant Timothy Goforth were tried jointly on an information alleging that they committed first-degree robbery involving the use and display of a firearm. At trial, the victim of the alleged crime testified that he had known both Mumford and Goforth prior to the time the robbery occurred, that they both entered his residence in the early morning hours of February 4, 1982, and forcefully took his wallet and checkbook. The victim further testified that during the robbery, Mumford was armed with a long-barreled revolver and pistol-whipped him with it. There was also evidence at the trial that a woman who resided with Mumford found the victim's checkbook at Mumford's apartment on February 5, 1982, and turned it over to police.

When the case was submitted to the jury, the trial court gave the following marshalling instruction with respect to the first-degree robbery charge against Mumford:

You must find the defendant, Gary Dean Mumford, not guilty of the offense of Robbery in the First Degree, as charged in the Trial Information, unless the State proves by evidence beyond a reasonable doubt, each of the following elements:

1. That on or about the 4th day of February, 1982, the defendant, Gary Dean Mumford, intended to commit a theft or aided and abetted another who intended to commit a theft. The term "theft" is defined for you in Instruction No. 12.

2. That at the time of the intended theft the defendant, Gary Dean Mumford, committed an assault on [the victim] or aided and abetted another who committed an assault on [the victim]. The term "assault" is defined for you Instruction No. 11.

3. That the defendant, Gary Dean Mumford, did so to assist or further the commission of the theft.

4. That at the time the defendant, Gary Dean Mumford, or the person he

was aiding and abetting was armed with a dangerous weapon.

If you find the State has proved beyond a reasonable doubt each and all of the elements, then you will find the defendant, Gary Dean Mumford, guilty of Robbery in the First Degree as charged in the Trial Information; but, if you find the State has failed to prove beyond a reasonable doubt one or more of the elements, then you will find the defendant, Gary Dean Mumford, not guilty of Robbery in the First Degree, as charged in the Trial Information, and proceed to determine whether he is guilty of the lesser included offense of Robbery in the Second Degree.

The trial court also submitted to the jury the lesser included offense of robbery in the second degree with respect to the charges against Mumford. In the marshalling instruction as to that offense, the elements were the same as for robbery in the first degree except that the fourth element, being "armed with a dangerous weapon," was omitted.

In a separate instruction, the jury was told that "a pistol or revolver is a dangerous weapon." For purposes of Iowa Code section 902.7 (1981), the mandatory minimum sentencing statute applicable to forcible felonies where firearms are involved, the jury was asked to answer the following special interrogatory as to each defendant:

Did the state of Iowa establish beyond a reasonable doubt that at the time of the commission of the offense the defendant, himself, or a person he was aiding and abetting was armed with a firearm?

The jury began its deliberations about 11:45 a.m. on Friday, September 10, 1982. At about 4:40 p.m. on that day, the jury communicated to the court that it had arrived at a verdict. Upon examination of the forms of verdict and answers to special interrogatories signed by the jury foreman, the trial court discovered that the jury had returned a verdict of guilty of robbery in the first degree as to both Mumford and Goforth. In its answers to interrogatories as to each defendant the jury answered "no" to the question concerning use of a firearm.

Despite the fact that a poll of the jury indicated that the completed verdict forms and the answers to interrogatories represented the unanimous finding of the jury, the trial court expressed reluctance to accept the verdict. Because of the lateness of the hour, the court elected to send the jury home with instructions to return again at 8:30 a.m. the following Monday.

On Monday, September 13, prior to the time the jury was brought into the courtroom, the trial court stated on the record that it appeared that this was a proper case to require the jury to reconsider its verdict in accordance with the provisions of Iowa Rule of Criminal Procedure 21(6). Counsel for Mumford objected to this procedure and requested that the court either accept a verdict of guilty of second-degree robbery or grant a mistrial. This request was denied by the court as to each of those alternatives. The reason given by the trial court for requiring further deliberations by the jury was its belief that there was a significant and material inconsistency between the general verdict and the jury's answer to the special interrogatory. The negative answer to the interrogatory on use of a firearm was deemed by the court to be inconsistent with a jury finding that the defendants were armed with a dangerous weapon because the only evidence of the use of any weapon involved use of a handgun.

At 9 a.m. on September 13, the court had the jury brought into the courtroom and advised the jurors as follows:

Good morning, ladies and gentlemen. At this time the court is requesting that you return to your jury room and continue your deliberations. You are to reread all the instructions. You will have all the exhibits in your jury room with you. The court is going to provide you with new verdict forms and new interrogatory forms. They are identical to the ónes originally given to you, but they are new in the sense there are no markings on any of these forms.

At 9:50 a.m. on September 13, the jury sent a written message to the trial court which asked:

Instruction 29, part 4, says that we must find that the defendant was armed with a dangerous weapon.

The charge says they were armed with a firearm.

Is this the problem with our decision?

The trial court sent the following written response to this message on the same piece of paper which contained the jury's question: "The answer to your question is yes. Reread the instructions. /s/ Judge Novak." Counsel for Mumford agreed that a written response to the jury's inquiry was appropriate and that it was not necessary that such response be given in open court. He objected to the form of the response, however, on the ground that it was calculated to cause the jury to change its prior answer to the interrogatory.

The jury deliberations on September 13 were recessed at noon to permit a juror to attend the funeral of a relative. The deliberations resumed at 9 a.m. on September 14, at which time the trial court gave the jury the following additional instruction:

The Court has defined for you in Instruction No. 13 that a pistol or revolver is a dangerous weapon. The Court has also defined for you in Instructions 35 and 36 that a pistol or revolver is a firearm. Therefore, a pistol or revolver is both a dangerous weapon and a firearm.

Your original verdict of Robbery in the First Degree was therefore inconsistent with your "No" answers to the interrogatories as to whether either defendant was armed with a firearm.

If you find that the State has failed to prove beyond a reasonable doubt that either defendant was armed with a firearm at the time of the commission of the offense, then you cannot find under the facts in this case that the defendants or either of them was armed with a dangerous weapon, and, therefore, you cannot find the defendants guilty of Robbery in the First Degree.

You should take this additional instruction back into the deliberating room and read it in connection with all of the other instructions heretofore provided you. Consider all of instructions together and apply them as a whole to the evidence in this case.

Counsel for Mumford objected to the giving of the foregoing instruction on the ground that it tended to coerce the jury into rejecting its original finding on the issue of the use of a firearm and was calculated to produce a different finding consistent with the general verdict previously returned.

At 10:30 a.m. on September 14, the jury returned a verdict finding both defendants guilty of robbery in the first degree and answering "yes" to the special interrogatory relating to use of a firearm.

I. *Effect of Conflict Between General Verdict and Special Finding.*

Mumford's first and primary contention on appeal is that the jury's initial response to the special interrogatory clearly reflects a negative finding on both use of a firearm and use of a dangerous weapon, and that such finding precludes a verdict of guilt as to the offense of first-degree robbery. For purposes of this argument, Mumford accepts the conclusions of the trial court that on the record of this case the issues of use of a firearm and being armed with a dangerous weapon are synonymous, and accordingly there is a material conflict between the general verdict and the special finding of the jury.

In urging that the jury's special finding as originally returned should be deemed controlling, Mumford relies upon our statement in *Berghammer v. Smith,* 185 N.W.2d 226, 234 (Iowa 1971) that: "It is true that irreconcilable conflict between a general verdict and a special finding must be resolved in favor of the special finding, and that in such circumstances the general verdict cannot stand." He urges that we recognized the applicability of this rule in criminal cases in *State v. Propps,* 190 N.W.2d 408, 411 (Iowa 1971). In addition, he relies on *State v. Wedner,* 24 Wash.App. 346, 601 P.2d 950 (1979) and *State v. Hur-*

*ley,* 4 Wash.App. 781, 483 P.2d 1274 (1971), where the court in each case held that a jury's special finding that the defendant was not armed with a deadly weapon precluded a general verdict of guilt on a charge for which such circumstance was an essential element.

◼ We find defendant's argument based on the cited cases to be inapposite to the present facts. In each of those cases the trial court had accepted the forms of verdict which the jury returned and had discharged the jury. The issue then became solely a problem of interpretation of the findings which the verdicts reflected. In the present case, the trial court *refused* to accept the verdict of the jury or its answers to the special interrogatory. As a result, the trial court was not called upon to interpret the findings. Indeed, its action in this regard appears clearly to have been intended to permit the jury itself to resolve any conflict between its general verdict and special findings.

## II. *Applicability of Rule 21(6).*

In civil cases, Rule of Civil Procedure 206 permits the court to send the jury back for further deliberation when its special findings are inconsistent with its general verdict. In the present case, the trial court found that Rule of Criminal Procedure 21(6) permitted the same thing to be done in criminal cases. That rule provides:

> If the jury renders a verdict which is in none of the forms specified in this rule, or a verdict of guilty in which it appears to the court that the jury was mistaken as to the law, the court may direct the jury to reconsider it, and it shall not be recorded until it is rendered in some form from which the intent of the jury can be clearly understood. If the jury persists in finding an informal verdict, from which, however, it can be understood that the intention is to find for the defendant upon the issue, it shall be entered in the terms in which it is found, and the court must give judgment of acquittal.

Mumford urges that rule 21(6) does not permit the trial court to do what was done in the present case. Two points are advanced in support of this contention: First, that the verdicts and findings initially returned by the jury were in proper form and therefore cannot be considered "informal verdicts"; and second, that there is no indication in the verdict forms that the jury was mistaken as to the law. While we agree with the first of these contentions, we disagree with the second. We cannot accept Mumford's contention that the dilemma presented to the trial court should be characterized as a mistake of fact rather than a mistake of law.

◼ Rule 18(5)(f), Rules of Criminal Procedure, provides: "Upon the conclusion of the arguments, the court shall charge the jury in writing, without oral explanation or qualification, stating the law of the case." The office of such instructions is to state the rules of law applicable to the matter to be determined. *State v. Proost,* 225 Iowa 628, 635, 281 N.W. 167, 170–71 (1938). The ultimate test of their sufficiency is whether they set out for the jury the issues to be determined. *State v. Morelock,* 164 N.W.2d 819, 823 (Iowa 1969). For purposes of the jury's deliberations and findings, the instructions are "the law of the case." *State v. Brooks,* 222 Iowa 651, 653, 269 N.W. 875, 876 (1936). Our review of the trial court's original instructions to the jury in the present case suggests that if the jury correctly applied the law as given in its instructions to the evidence offered at trial, it should not have returned the particular combination of general verdict and special findings which it did. We therefore agree with the trial court that the action taken by the jury suggests that it was "mistaken as to the law" as set forth in the trial court's instructions.

◼ In application of rule 21(6) to situations where special findings of the jury conflict with the general verdict, we are persuaded that trial courts should have some of the alternatives in criminal cases which Iowa Rule of Civil Procedure 206 provides in civil cases. That rule gives the trial court in civil cases the alternatives of

(a) accepting the verdict and entering judgment consistent with the special findings, (b) sending the matter back to the jury for further deliberation, or (c) ordering a new trial. While we have substantial doubt that the first alternative should ever be availed of in a criminal trial, we approve use of the latter two in criminal cases. Which of those alternatives is to be adopted in a given case is a matter falling within the sound discretion of the trial court. Nothing in the record suggests that the trial court abused that discretion in ordering further deliberation in the present case.

### III. The Double Jeopardy Claim.

■ Next, Mumford asserts that the effect of the trial court's rejection of the jury's initial verdict and special findings served to twice place him in jeopardy for the offense of first-degree robbery. In considering this contention, we recognize that as defendant suggests there may be an acquittal in the constitutional sense without the return of a formal verdict on the particular charge as to which a double jeopardy claim is advanced. See Green v. United States, 355 U.S. 184, 191, 78 S.Ct. 221, 225, 2 L.Ed.2d 199, 206 (1957). In order for this to occur, however, there must be some dispositive action by judge or jury from which a finding of acquittal can be made. In Green such final action involved the court's acceptance of a jury verdict on a lesser offense. In the present case, the original verdict returned by the jury did not acquit Mumford of first-degree robbery. Moreover, neither the original general verdict or the special finding ever became final because the trial court refused to accept either. Defendant's jeopardy therefore merely continued in the same proceeding until the conflict between the general verdict and the special findings was resolved by the jury upon further consideration.

Because of the apparent conflict which was presented, the trial court had a legitimate reason to require further consideration by the jury of the forms of verdict and answers to interrogatories before accepting them as the final verdict in the case. Such action by the trial court did not, as defendant suggests, involve the type of interference with the jurors' independent judgment which was condemned in United States v. Martin Linen Supply Co., 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355, 51 L.Ed.2d 642, 652 (1977). We find the double jeopardy claim is without merit.

### IV. Coercive Effect of Requiring Further Jury Deliberation.

■ The last issue which we consider is Mumford's claim that the ultimate verdict of the jury is the product of a subtle but nonetheless genuine coercion flowing from the circumstances under which it was returned. He first suggests that, given the totality of the circumstances, the jury must have believed that the only action it could take to satisfy the trial court was to change its answer to the special interrogatory from "no" to "yes." We find no support for this contention. Neither the trial court's response to the jury's written inquiry or its additional instruction to the jury with respect to the conflict between the general verdict and special finding tends to give this impression. The thrust of the latter instruction is merely to preclude a conviction of the greater offense in the absence of satisfactory proof of an essential element thereof. Nor do we find any other circumstances in the record which can fairly be interpreted as suggesting to the jury that the lack of consistency between the general verdict and the special finding could only be cured by changing the latter. The jury was left free to alter either depending upon its ultimate finding of the facts of the case.

Mumford advances another theory of coercion which is more difficult to deal with. He suggests that it would be less embarrassing for the jurors to change their answer to the special interrogatory than to admit that they had erred as to defendant's guilt of the offense charged. Given this circumstance, he suggests that it was quite predictable that the jury would respond as it did. The weakness in an argument of this type is its speculative nature. Neither common experience nor the record in the instant case will support a claim that the jury entertained such a state of mind or, if

it did, that such circumstance influenced its verdict. As a result, we must assume that the jury followed the instructions of the court and responded to the merits of the case based upon its view of the evidence.

In holding as we do, we do not suggest that circumstances will not be present in some cases which render it improper for a court to require a jury to reconsider a verdict; but we find no such circumstances in the present case. In this respect, the present case differs substantially from *Phillips Chemical Co. v. Hulbert,* 301 F.2d 747, 751 (5th Cir.1962) relied upon by Mumford in support of a reversal. In *Hulbert,* the court recognized the general rule in civil cases to be as follows:

> [A] trial court, upon discovering an inconsistency between a general verdict and a special verdict, can attempt to have the inconsistency remedied in any of three ways. The court can direct the entry of judgment on the special verdict, order a new trial, or return the jury for further deliberation. Ordinarily, it is discretionary with the court as to which of these alternatives is pursued.... However, this discretion must be exercised in light of the circumstances under which the inconsistency arises. In the instant case, it was improper to return the jury for further consideration because the jury had been rendered incapable of fairly resolving the inconsistency due to the fact that it had reached its general verdict without any consideration whatever of the special interrogatory on malice.

In *Hulbert* the court determined that a new trial should have been ordered rather than further deliberation because the special interrogatory which was inconsistent with the jury's verdict was not submitted until after the general verdict was returned. In addition, the special interrogatory was directed to an issue which, although an essential element of recovery, was not mentioned in the original instructions from which the jury reached its general verdict. In the present case, the jury was properly instructed from the beginning and no tangible ground appears which would render it incapable of fairly resolving the conflict between the original verdict and the special finding. We have considered all issues presented and find no basis for reversal.

AFFIRMED.