# IN THE COURT OF APPEALS OF IOWA

No. 17-1910
Filed April 3, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DANIEL LEROY CONNERLEY,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Floyd County, Christopher C. Foy,

Judge.


        A defendant appeals his convictions for theft and ongoing criminal conduct.

**AFFIRMED.**


        Stuart G. Hoover of Blair & Fitzsimmons, P.C., Dubuque, for appellant.

        Thomas J. Miller, Attorney General, and Benjamin Parrott, Assistant

Attorney General, for appellee.


        Considered by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

A torn five-dollar bill used to buy a cheeseburger at the Colwell Tap prompted the Floyd County Sherriff to investigate a string of cash thefts from gaming machines stationed in local businesses. The investigation's focus on Daniel Connerley led to his convictions for three counts of theft, as well as one count of ongoing criminal conduct. On appeal, he challenges the district court's supplemental instruction to the jury on one theft count and his related conviction for ongoing criminal conduct. Because the district court properly corrected a faulty verdict form before accepting the jury's verdicts, we affirm his convictions.

**I.      Facts and Prior Proceedings**

Michelle Kirsch owns Colwell Tap. In July 2016, Connerley came into her bar around noon, ordered a cheeseburger, and played the Golden Shamrock, one of the four gaming machines[1] she kept in her establishment. Before leaving about an hour later, Connerley paid Kirsch for lunch, handing her two five-dollar bills. One of the bills looked familiar—the corner was missing just like a five-dollar bill Kirsch slid into one of the machines earlier that morning.[2] Suspicious, Kirsch unlocked the machines to check the money inside. She discovered they were empty when, according to her tally, they should have contained $221.

Kirsch alerted the Floyd County sheriff and the following day officers executed a search warrant for Connerley's home and car. In late July, the State

---

[1] The games, owned by Redline Vending, operate "somewhat like a slot machine in that you put money in. You play a game." The difference is "[y]ou don't get money back." Instead, winners "get tickets or vouchers that you can use to purchase merchandise in those establishments."

[2] She recognized the bill because "it was torn and the machines are kind of picky. And it took me like four tries to get it to go in. And I was surprised it took it when it did."

charged Connerley with fourth-degree theft in violation of Iowa Code sections 714.1(1) and 714.2(4) (2016).

The following month, Rick Lensing, owner of 218 Fuel Express, discovered damage to one of the gaming machines in his convenience store. He notified Floyd County authorities and called Redline Vending, which maintained the machines. An inspection revealed $683 was missing. Redline Vending then checked its machines at the nearby Liquor Beer & Tobacco (LBT) Outlet Store "because it's common if machines get broken into in one place, it often happens in a string of locations." The LBT gaming machines also showed signs of tampering and were short $1688. Officers conducted a warranted search of Connerley's vehicle on August 14, finding $633 cash in his wallet and a stack of fifty one-dollar bills.

The State charged Connerley for his alleged involvement in the Fuel Express and LBT thefts. The trial information alleged four counts: (1) ongoing criminal conduct in violation of Iowa Code section 706A.2(4); (2) second-degree theft in violation of section 714.2(2), for taking property valued at more than $1000 but not more than $10,000 from the LBT machines; (3) third-degree theft in violation of section 714.2(3), for taking property valued at more than $500 but not more than $1000; and (4) (unrelated to the gaming-machine thefts) possession of methamphetamine. The district court granted the State's motion to consolidate the two prosecutions.

A two-day jury trial began on September 12, 2017. The business owners and investigators described how the machines were broken into and cash was taken. The State also presented surveillance video of Connerley at the machines.

At the close of the trial, the court instructed the jury on the correlation between the amount of cash taken and the degree of theft.

> If you find the defendant guilty of theft on the Colwell Tap charge, the LBT Outlet charge, or the Fuel Express charge, then you must determine the degree of theft for that crime, which is based on the amount of cash taken in its commission. The State must prove the amount of cash taken. The following are the different degrees of theft:
> 1. The theft of no more than $200 in cash is theft in the fifth degree.
> 2. The theft of more than $200 but no more than $500 in cash is theft in the fourth degree.
> 3. The theft of more than $500 but no more than $1,000 in cash is theft in the third degree.
> 4. The theft of more than $1,000 but no more than $10,000 in cash is [t]heft in the second degree.

The court also gave the jury five verdict forms. All three verdict forms for the theft counts (second-degree for the LBT Outlet; third-degree for Fuel Express; and fourth-degree for Colwell Tap) included the following:

> We, the jury, find defendant guilty of theft as to the [name of establishment] charge and further find the amount of cash taken in the commission of the crime to be:
> ___ Not more than $200.
> ___ More than $200 but not more than $500.
> ___ More than $500 but not more than $1,000.
> ___ More than $1,000 but not more than $10,000.
>
>                   _____
>                   Foreperson

> We, the jury, find the defendant not guilty on the [name of establishment] charge.
>
>                   _____
>                   Foreperson

The jury began deliberations the afternoon of September 14. Just before 7:00 that evening, the jury returned to the courtroom with its verdicts. Before proceeding, the court reviewed the returned verdicts. In its review, the court noted an irregularity—in the verdict form corresponding to the Fuel Express charge, the

jury found the amount of cash taken to be "[m]ore than $1,000 but not more than $10,000"—a range that constituted second-degree theft when the State only charged third-degree theft for that count.

The court discussed the issue with counsel outside the presence of the jury. When conferring with counsel, the court proposed informing the jurors of the error and sending them back to deliberate with a corrected verdict form. The court told counsel it realized in hindsight that it was "a mistake on my part" to give the jury the option of finding Connerley guilty of a higher degree of theft than charged by the State.

The State agreed with the court's approach and invoked Iowa Rule of Criminal Procedure 2.22(6), which allows a court to direct the jury to reconsider its verdict if "it appears to the court that the jury was mistaken as to the law." Defense counsel disagreed with the court's proposal to "redirect" the jury. The defense moved for a mistrial on the third-degree theft count and ongoing criminal conduct. In the alternative, the defense lobbied the court to resubmit a clean version of the original verdict form.

The court denied the mistrial motion. The court provided the jury with the following supplemental instruction:

> The verdict you returned on Count III . . . (the Fuel Express charge) revealed an error made by the court in preparing the verdict form for this charge. The court has corrected this error and an amended verdict form for Count III is attached. Please resume your deliberations on the Fuel Express charge and complete the amended verdict form when you have agreed upon a unanimous verdict as to this charge. Because your earlier verdict on the Fuel Express charge may have affected the verdict you returned on Count I, the charge of ongoing criminal conduct, the court has attached another verdict form on Count I for your use. Once you have completed the amended verdict form for the Fuel Express charge, you should

complete the attached verdict form for the charge of ongoing criminal conduct.

The court resubmitted verdict forms for both ongoing criminal conduct and the third-degree theft count. The court modified the theft form to remove the category of "more than $1,000 but not more than $10,000." The new form read as follows:

> We, the jury, find defendant guilty of theft as to the Fuel Express charge and further find the amount of cash taken in the commission of the crime to be:
> ___ Not more than $200.
> ___ More than $200 but not more than $500.
> ___ More than $500 but not more than $1,000.
>
> _____
> Foreperson
>
> We, the jury, find the defendant not guilty on the Fuel Express charge.
>
> _____
> Foreperson

Eight minutes after the court sent the jury back to continue deliberating, the jury returned its verdict finding Connerley guilty of the Fuel Express theft, and finding the amount to be "[m]ore than $500 but not more than $1,000." And the jury again submitted a guilty verdict on the ongoing-criminal-conduct count.[3]

Connerley appeals. He argues the court misapplied Iowa Rule of Criminal Procedure 2.22(6) in modifying the verdict form after the jury returned its verdict. He also suggests the verdict-form resubmission violated his right to an impartial

---

[3] With regard to the State's remaining counts, the jury found Connerley guilty of fifth-degree theft (an amount not more than $200) for the Colwell Tap charge; second-degree theft (an amount more than $1000 but less than $10,000) for the LBT Outlet charge; and guilty of possession of methamphetamine. Connerley does not challenge those convictions on appeal.

jury under the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Iowa Constitution.[4]

## II.    Error Preservation

The State agrees Connerley preserved error on the district court's application of rule 2.22(6).  But the State contends no other issue is properly before us.[5]  Connerley did not object to the verdict forms as originally submitted. Accordingly, we agree Connerley is precluded on appeal from challenging the verdict form as originally submitted.  *See State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988) ("We have repeatedly held that timely objection to jury instructions in criminal prosecutions is necessary in order to preserve any error thereon for appellate review." (citations omitted)).  Likewise, we decline to address his constitutional claims.  He did not raise them in the district court and spends no time developing them on appeal. *See Hyler v. Garner*, 548 N.W.2d 864, 876 (Iowa 1996) ("[W]e will not speculate on the arguments [the parties] might have made and then search for legal authority and comb the record for facts to support such arguments.").

## III.    Scope and Standards of Review

We review the district court's decision to give further instruction to the jury for an abuse of discretion.  *State v. Watkins,* 463 N.W.2d 15, 18 (Iowa 1990).

---

[4] Connerley does not assert the district abused its discretion in denying his motion for a mistrial upon the jury's return of the initial verdict based on the erroneous verdict form.

[5] Connerley insists "[e]rror was preserved by the timely filing of the Notice of Appeal in this matter."  But as we have repeatedly explained, filing a notice of appeal is not a means of preserving error.  *See, e.g.*, *State v. Erwin*, No. 18-0523, 2018 WL 6706247, at *2 (Iowa Ct. App. Dec. 19, 2018); *see also* Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006).

We review claims involving the interpretation of a rule for correction of legal error. *State v. Harrington*, 893 N.W.2d 36, 41 (Iowa 2017).

**IV.      Analysis**

Connerley contends the district court's decision to provide the jury with a corrected verdict form contravened rule 2.22(6).    That rule describes circumstances when the court may direct the jury to reconsider its verdict:

> If the jury renders a verdict which is in none of the forms specified in this rule, or a verdict of guilty in which it appears to the court that the jury was mistaken as to the law, the court may direct the jury to reconsider it, and it shall not be recorded until it is rendered in some form from which the intent of the jury can be clearly understood.  If the jury persists in finding an informal verdict, from which, however, it can be understood that the intention is to find for the defendant upon the issue, it shall be entered in the terms in which it is found, and the court must give judgment of acquittal.

Iowa R. Crim. P. 2.22(6).

Connerley does not take issue with resubmission of the matter to the jury. Rather, he maintains the court's revision of the verdict form precluded the jury from "persist[ing] in finding an informal verdict," as contemplated by the rule.

But Connerley overlooks the next clause—"from which . . . it can be understood that the intention is to find for the defendant upon the issue." *Id.* Here, the jury's original verdict finding Connerley guilty of a greater level of theft than charged by the State did not signal the jury's intention "to find for the defendant upon the issue." *See id.* Connerley cites no authority for his implicit proposition a court must allow a jury to persist in reaching a verdict on an offense that was neither charged nor supported by the evidence.  And Connerley does not argue the jury's final verdict left ambiguity as to its intent.  *See id.* ("[A guilty verdict] shall not be recorded until it is rendered in some form from which the intent of the jury

can be clearly understood."); *see also State v. Scholtes*, No. 16-1967, 2017 WL 3525196, at *2 (Iowa Ct. App. Aug. 16, 2017) ("In addition, the verdict the jury intended was clear; the jury necessarily found that the State proved bodily injury by finding Scholtes guilty of leaving the scene of a personal injury accident resulting in injury.").

Connerley compares this situation to inconsistent-verdicts cases, citing *State v. Halstead*, 791 N.W.2d 805, 815–16 (Iowa 2010), and *State v. Mumford*, 338 N.W.2d 366, 368 (Iowa 1983). Neither case supports his position. In *Halstead*, the jury found the defendant guilty of assault while participating in a felony but acquitted him of the underlying felony. 791 N.W.2d at 815. Because the verdicts were irreconcilably inconsistent, the court reversed the judgment. *Id.* No similar conundrum arose in Connerley's case. The court gave the jury a faulty verdict form, corrected its mistake, and directed the jury to reconsider. The analysis in *Halstead* suggested that course was proper. *See id.* at 813 (noting civil standards are "instructive" and Iowa Rule of Civil Procedure 1.934 allows the court to send the jury back for further deliberation even when verdicts are inconsistent).

In *Mumford*, the jury answered a special interrogatory that conflicted with its general verdict on first-degree robbery. 338 N.W.2d at 368. Before accepting the verdict, the district court instructed the jury to deliberate further. *Id.* After receiving supplemental instructions, the jury found Mumford guilty of first-degree robbery and answered "yes" to the special interrogatory on use of a firearm. *Id.* On appeal, our supreme court rejected Mumford's contention the court's instruction after resubmitting the matter to the jury was coercive and improper. *Id.* at 371–72.

The actions taken by the district court in Connerley's case were consistent with the teachings of *Mumford*. The court corrected the verdict form upon realizing its error and prevented the jury from returning a verdict unsupported by the evidence. Elsewhere in the instructions, the court properly informed the jury regarding the State's burden of proving all elements of the theft charge at issue. *See id.* at 372 ("[W]e must assume that the jury followed the instructions of the court and responded to the merits of the case based upon its view of the evidence."); *State v. Hanes*, 790 N.W.2d 545, 559 (Iowa 2010) ("[W]e examine jury instructions for reversible legal error by considering the instruction as a whole, and 'if some part was given improperly, the error is cured if the other instructions properly advise the jury as to the legal principles involved.'" (quoting *Thavenet v. Davis*, 589 N.W.2d 233, 237 (Iowa 1999))). Finding no basis for reversal, we affirm Connerley's convictions of third-degree theft and ongoing criminal conduct.[6]

**AFFIRMED.**

---

[6] Our conclusion that the court's modification of the verdict form was proper is bolstered by the line of cases allowing a court to enter judgment on a lesser-included offense when the verdict on a greater offense is unsupported by the evidence. *See, e.g.*, *State v. Morris*, 677 N.W.2d 787, 788–89 (Iowa 2004) ("[T]he jury necessarily found that the State had established all elements of the included offense. In such instances, we have approved entering an amended judgment of conviction with respect to the lesser-included offense.").