**STATE of Iowa, Appellee,**

v.

**Sankom PHANHSOUVANH, Appellant.**

No. 91–280.

Supreme Court of Iowa.

Dec. 23, 1992.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Julie A. Halligan, Asst. Atty. Gen., John P. Sarcone, County Atty., and Kathleen Deal, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, NEUMAN, and SNELL, JJ.

LAVORATO, Justice.

The defendant, Sankom Phanhsouvanh, appeals from judgment and sentence imposed following conviction by a jury of the offense of sexual abuse in the second degree. *See* Iowa Code §§ 709.1, 709.3(1) (1989). The defendant contends that the jury returned a general verdict that was inconsistent with the answer to a special interrogatory. For this reason, the defendant asserts that the district court abused its discretion when it refused to grant his motion for mistrial or his request to send the case back to the jury for further deliberations. The defendant also challenges the sufficiency of the evidence to support the verdict.

We sent the case to the court of appeals, where the defendant's conviction was affirmed by operation of law because the court was equally divided. The case is now before us on further review. After considering the defendant's contentions we affirm the decision of the court of appeals and the judgment of the district court.

The victim's testimony presented the following factual scenario for the jury to consider. The victim and the defendant began living together in November 1988. They engaged in voluntary sexual intercourse from that time until several weeks before this incident.

On July 6, 1989, the couple had an argument. Following this argument, the defendant took some clothing and left for work. This was on a Friday morning. The defendant did not return to the couple's apartment until the following Sunday evening about midnight. The defendant—who had no key to the couple's apartment—knocked on the door, and the victim let him in. She let him in because she thought he was going to get the rest of his clothes and leave.

The victim noticed that the defendant had been drinking. She followed him into the living room where he pulled a gun on her and pointed it towards her. He said, "If I can't have you, nobody else can. And you are going to do whatever I want you to." He also told her that if she did not do what he said to do he would kill her. At this point she thought the gun was loaded.

With gun in hand the defendant led the victim into their bedroom. He grabbed at her clothing, ripping her underwear. He then pushed her onto the bed, grabbed her hair, and forced her to engage in oral and vaginal sex.

When asked if the defendant had a gun pointed at her during this time, the victim responded:

> I don't remember when he put the gun down.... I don't remember if he had it in his hand or not because by then I was just—I was—I just don't remember. I was scared and I don't remember.

The sex acts were done against the victim's will; she tried to resist but was unsuccessful. She feared she was going to die.

Eventually the defendant stopped and fell asleep. At this point the victim dressed, drove to a pay phone, and called the police.

The officers who responded to the victim's call testified they met her at the pay phone. The officers described the victim as being "very upset, crying, shaking." Because the victim told the officers the defendant had a gun, they called for back-up. The officers found the defendant asleep where the victim had left him. They also found the gun the victim had described—a .45 semiautomatic pistol. It was at the foot of the bed under a pair of jeans, and it was loaded.

After the defendant was taken into custody, the victim went to the hospital for a sexual assault exam. The examining doctor testified about what the victim had told him: she had been sexually assaulted by her ex-boyfriend who had a weapon; he forced her to have both oral and vaginal sex. The doctor found seminal fluid in the victim's vagina, which led him to believe the victim had probably had sexual intercourse within four to six hours of the exam.

A police officer interviewed the victim the next afternoon. According to his testimony, the victim made these statements to him: the defendant said that he would kill her if she called the police and that he had a gun and would blow her head off.

A criminalist at the Iowa division of criminal investigation testified she had examined the victim's clothing and found that the elastic on the victim's panties had been torn. In the criminalist's opinion the tear was not the result of ordinary wear and tear. The criminalist also found a seminal fluid stain on the panties but could not determine whose seminal fluid it was.

At trial the defendant testified through an interpreter. He said he owned the gun which he kept in a corner of the bedroom for protection of his belongings. He denied the sexual assaults, denied the gun incident the victim had described, denied ripping her panties, denied making the statements the victim had testified to, and denied threatening to kill her.

I. *Refusal to Grant Mistrial or Request to Send Case Back to the Jury for Further Deliberations.*

When the district court submitted this case to the jury, it gave the following marshaling instruction with respect to the second-degree sexual abuse charge against the defendant:

The State must prove all of the following elements of sexual abuse in the second degree:

1. On or about the 9th day of July, 1990, the defendant performed a sex act with [the victim].

2. The defendant performed the sex act by force or against the will of [the victim].

3. During the sex act, the defendant:

(a) displayed a dangerous weapon in a threatening manner; or

(b) used or threatened to use force creating a substantial risk of death or serious injury to [the victim].

If the State has proved all of the elements, the defendant is guilty of sexual abuse in the second degree. If the State has failed to prove any one of the elements, the defendant is not guilty of sexual abuse in the second degree and you will then consider the charge of sexual abuse in the third degree explained in [another instruction].

This instruction follows the plain English uniform jury instruction. 1 Iowa Criminal Jury Instructions 900.2 (1991). In another instruction the jury was told the burden is on the State to prove the defendant guilty beyond a reasonable doubt. *See* 1 Iowa Criminal Jury Instructions 100.10 (1988). The district court instructed the jury on the lesser included offense of sexual abuse in the third degree. This instruction does not contain the third element: displaying a dangerous weapon or threatening to use force.

Because a gun was alleged to be involved, the district court submitted an instruction and interrogatory to determine whether the mandatory minimum sentencing provisions of Iowa Code section 902.7 applied. The instruction provided:

You are not to consider this instruction ... unless you find the defendant was guilty of sexual abuse in the second degree or sexual abuse in the third degree. If you find the defendant was guilty of sexual abuse in the second degree or sexual abuse in the third degree, then you must consider whether at the time of the commission of the offense, the defendant was in the immediate possession and control of a firearm, displayed a firearm in a threatening manner, or was armed with a firearm at the time of the commission of the offense.

In this regard you are instructed as follows:

1. To be armed means the defendant had a firearm on his person at the time of the crime. It is not necessary the firearm was used, displayed or represented as being in his possession.

2. Displaying a firearm in a threatening manner means to show or make the existence of a firearm apparent in a manner that intimidates the victim at the time of the crime.

3. To represent defendant had a firearm means to state, or act as if, a firearm was in his possession at the time of the crime. It is not necessary there actually was a firearm, or that it was shown. However, there must have been an act or statement by him that would cause the victim to reasonably believe the defendant had a firearm on his person.

The special interrogatory provided:

(To be answered only in the event you return a verdict of guilty of sexual abuse in the second degree or sexual abuse in the third degree.)

Did the State of Iowa establish beyond a reasonable doubt that at the time of the commission of the offense the defendant, Sankom Phanhsouvanh, was in the immediate possession and control of a firearm, or displayed a firearm in a threatening manner, or was armed with a firearm?

Answer: "Yes" or "No"

Answer: ____

In the general verdict form the jury found the defendant guilty of sexual abuse in the second degree. The jury answered "no" to the special interrogatory.

After reviewing the jury's verdict and the answer to the special interrogatory, the district court initially thought the two were inconsistent. This prompted the defendant to move for a mistrial. The court reserved ruling on the motion and recessed the proceedings until the following Monday morning.

Over the weekend the court reviewed the evidence and concluded that the verdict and the answer to the special interrogatory were not inconsistent. When the court reconvened the proceedings on Monday morning, it accepted the jury's verdict.

The defendant objected, renewed his motion for mistrial, and moved in the alternative for further deliberations without further instructions to the jury. The court overruled the objection and the motions. The court then polled the jury as to the verdict and the answer to the special interrogatory. By a show of hands the jury indicated unanimously that it was their verdict and their answer.

■ On appeal the defendant again complains that the jury's verdict and the answer to the special interrogatory were inconsistent. Because of that, the defendant asserts the district court abused its discretion in denying his motion for mistrial or in the alternative for further jury deliberations. Our review on this issue is for abuse of discretion. *See State v. Mumford,* 338 N.W.2d 366, 370–71 (Iowa 1983).

■ The crux of the defendant's argument is this. Under the evidence the defendant's possession or display of the gun was inextricably tied to any threatened use of force that created a substantial risk of death or serious injury. In other words, the evidence showed that the force used or threatened to be used to create a substantial risk of death or serious injury *had* to be the gun. So the jury's verdict is inconsistent with the answer to the special interrogatory.

The argument seems reasonable. But on further reflection we agree with the dis-

trict court's logical explanation of its ruling:

> The jury was given alternative theories for finding the defendant guilty of sexual abuse in the second degree [as] set forth in [the marshaling instruction.]
>
> . . . .
>
> The jury found the defendant guilty of sexual abuse in the second degree and since the jury answered the special interrogatory "no," that he did not either go armed with a firearm or did not display one in a threatening manner or did not represent that he had a firearm, based on all those instructions, they obviously couldn't have found him guilty of sub a of paragraph 3 [displayed a dangerous weapon in a threatening manner] beyond a reasonable doubt.
>
> However, based on the record, evidently *the jury could have found,* and the court assumes [it] did, *that even if he did not have the firearm during the sex act as the [marshaling instruction on second-degree sexual abuse] read, they could have found that he used or threatened to use force creating a substantial risk of death or serious injury to the victim. Because the record evidence is that the victim claims that at some point in time he did threaten to kill her ... whether he had the gun at that time would not be essential to the jury's verdict.*

Simply put, alternative theories of second-degree sexual abuse—displaying a dangerous weapon or using or threatening to use serious or deadly force—were submitted to the jury. The evidence was sufficient to convict under either theory. The jury, however, concluded that the State had failed to prove the first theory. But the jury could certainly have found that the State had proved the second theory. The district court was well within its discretion to conclude the same thing.

As the State says, resolving the conflict in the evidence with regard to the defendant's threats and use of a gun was a jury function. The jury could believe all, some, or none of the testimony of the witnesses. *State v. Brown,* 466 N.W.2d 702, 704 (Iowa App.1990). The evidence shows the victim could not recall where the gun was while she was being assaulted. The jury therefore could have found that the State did not prove the defendant displayed a dangerous weapon during the sex acts—the first alternative for a finding of second-degree sexual abuse.

Likewise the evidence shows that the defendant—apart from the gun—threatened to kill the victim if she did not do what he wanted or if she went to the police. We agree with the State that this last piece of evidence supports a finding of guilt on the alternative theory: the defendant threatened to use force creating a substantial risk of death or serious injury to the victim.

For all these reasons we conclude the jury correctly applied the law to the facts. The district court did not abuse its discretion in accepting the verdict.

## II. *Sufficiency of the Evidence.*

In sufficiency of evidence challenges, we review the evidence in the light most favorable to the State. *State v. Dallen,* 452 N.W.2d 398, 399 (Iowa 1990). We engage in all reasonable inferences. *Id.*

The defendant claims that there was insufficient evidence to support the verdict. The argument underlying this claim is the same one he uses to support his contention that the verdict was inconsistent with the answer to the special interrogatory. In short, he says the jury found that a gun was not used during the incident, thereby eliminating the first alternative for a finding of second-degree sexual abuse. He then says the State failed to prove a threat that did not involve the gun, thereby eliminating the second alternative for a finding of second-degree sexual abuse. We concluded otherwise in division I.

On this point the victim testified that the defendant threatened to kill her during the assault. Her statement was corroborated by the officer who interviewed her the next day. The defendant denied making the threat. From this testimony, the jury could adopt the evidence it found credible.

Viewing the evidence in the light most favorable to the State, we think the jury could have found that—apart from the gun—the defendant threatened to use deadly or serious force against the victim during the incident. This evidence was sufficient to support a verdict of sexual abuse in the second degree.

### III. *Disposition.*

Because the verdict of second-degree sexual abuse was consistent with the answer to the special interrogatory, the district court was well within its discretion to accept it. In addition, the evidence was sufficient to support the verdict. We therefore affirm the decision of the court of appeals and the judgment of the district court.

DECISION OF COURT OF APPEALS AFFIRMED; JUDGMENT OF THE DISTRICT COURT AFFIRMED.