# IN THE SUPREME COURT OF IOWA

No. 12–1336

Filed January 17, 2014

**STATE OF IOWA,**

    Appellee,

vs.

**MARSHAUN JORDAN MERRETT,**

    Appellant.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Richard G. Blane II, Judge.

Both the State and the defendant seek further review of a decision of the court of appeals, reversing one of the defendant's criminal convictions and remanding for a new trial thereon based on verdict inconsistency. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kyle P. Hanson, Assistant Attorney General, John P. Sarcone, County Attorney, and Daniel C. Voogt, Assistant County Attorney, for appellee.

**MANSFIELD, Justice**.

This case asks us to decide whether a jury's general verdict and special interrogatory answer were inconsistent and, if so, whether the district court could enter judgment on inconsistent verdicts at the defendant's urging.

Here the jury found the defendant guilty of intimidation with a dangerous weapon with intent based on his involvement in a shooting. At the same time, the jury answered "no" to a special interrogatory that asked whether the defendant had possessed a firearm. If the jury had answered "yes" to the interrogatory, the defendant would have been subject to a five-year minimum sentence under Iowa Code section 902.7 (2011). The district court viewed the verdicts as inconsistent and proposed that the matter be resubmitted to the jury. However, the defendant requested the court to accept the verdicts as rendered rather than run the risk of the jury changing its answer to the special interrogatory upon further inquiry. The State joined in the defendant's request, and the district court accepted the verdicts. The defendant then appealed, claiming the district court erred in accepting inconsistent verdicts. The court of appeals reversed and remanded for a new trial on the intimidation charge. We granted both parties' requests for further review.

Upon our review, we find the verdicts were not inconsistent based on how the case was charged to the jury. Accordingly, we affirm the defendant's convictions and sentences.

## I. Facts and Procedural History.

At some point late on November 25, 2011, three friends—Janee Jones, Nauriesha Johnson, and Alexia Klueppel—went to a club in Clive, Iowa. They stayed there until the club closed at approximately 1:45 a.m.

on November 26. The three women then departed, traveling east on Hickman Road in a rented Buick Enclave driven by Klueppel.

The women first stopped at a QuikTrip located at the intersection of Hickman Road and Martin Luther King, Jr. Parkway in Des Moines. When the QuikTrip turned out to be closed, they drove across the street to a Burger King where a group of people who had been at the club were gathered. A blue Chevrolet Monte Carlo driven by the defendant, Marshaun Merrett, pulled into the parking lot. Merrett was accompanied by Justin "Thirsty" Triplett.

Jones knew Merrett and Triplett to be affiliated with a group known as "C-Block." Jones belonged to a group known as "Infamous." While Johnson and Klueppel denied being affiliated with any group, they knew of the two groups and were friends with or hung around with members of Infamous. Jones indicated that C-Block and Infamous "don't get along." According to Jones, the feud between the two groups had resulted in "[a] lot of fights at the clubs" and she had personally been in a fight with Merrett before.

When Merrett entered the Burger King parking lot, he pulled his vehicle in front of the Buick Enclave and had a verbal altercation with Jones. Jones admitted she made a derogatory statement about C-Block. Klueppel testified that Merrett yelled, "B _ _ _ _, I'm going to kill you," at Jones. At that point, Jones told Klueppel they needed to leave.

By that time, police had arrived at the Burger King after receiving a tip that people were gathered in the parking lot and it appeared a fight was about to break out. The Enclave and the Monte Carlo departed from the Burger King parking lot shortly thereafter.

The two vehicles traveled together in a southbound direction on Martin Luther King, Jr. Parkway. The Enclave was driven by Klueppel,

with Jones riding in the front passenger seat and Johnson riding in back. One lane to the right, the Monte Carlo was driven by Merrett, with Triplett riding next to him in the front passenger seat.

As Merrett pulled alongside the passenger side of the Enclave, he rolled down his window in the Monte Carlo. Jones testified that she saw Merrett make a gun-like hand gesture, but did not see a gun at that time. She testified Merrett then rolled the window back up and his Monte Carlo got behind the Enclave. As the vehicles continued to move southbound, according to Jones, the Monte Carlo once again came alongside the Enclave on the passenger side, and Merrett again rolled his window down. At this point, gunshots were fired.

Jones testified that Merrett fired the shots. Johnson testified she did not see who fired the shots, but she thought they came from the Monte Carlo, and she heard Jones say Merrett had fired them. Klueppel likewise believed the shots came from the Monte Carlo, although she did not see who fired them. Klueppel recalled hearing several bullets strike the passenger side of the Enclave. All three women testified they feared they were going to be shot.

At this point, Klueppel stopped the Enclave and switched seats with Jones. Jones drove the vehicle initially to her apartment building, and then to another convenience station, where an unrelated fight was going on and police were present. A police officer spoke to Jones and inquired about bullet holes in the Enclave, but she did not report the shooting incident at that time.[1] In fact, no report was made until a week

---

[1]There was evidence that the rented vehicle had also been involved in two other shooting incidents, and the Enclave had bullet holes in several different locations. Some of the bullet holes were in the Enclave's front passenger door, front passenger window, rear passenger door, and the rear of the vehicle on the passenger side. These holes could have come from the encounter with Merrett's Monte Carlo. A technician

later. Jones explained that she and Klueppel subsequently received letters from the rental car agency about damage to the vehicle. At that point, they decided to report the incident to the police because they were concerned about paying for the repairs.

Merrett was eventually charged with three counts of attempted murder (Jones, Klueppel, and Johnson), *see* Iowa Code § 707.11, one count of criminal gang participation, *see id.* §§ 723A.1–.2, one count of intimidation with a dangerous weapon with intent, *see id.* § 708.6, and one count of operating a motor vehicle while barred, *see id.* § 321.561. Trial began on June 4, 2012.

Following the presentation of evidence, the jury was instructed on all charges. In addition to receiving instructions on attempted murder for Counts I, II, and III, the jury was also given instructions on the lesser included offenses of assault with intent to inflict serious injury and simple assault. These instructions read as follows:

> As to Count [I, II, or III], the State must prove all of the following elements of Assault with Intent to Inflict Serious Injury:
>
> 1. On or about the time period between November 25, 2011 and November 26, 2011, the Defendant intentionally pointed a firearm at [Jones, Johnson, or Klueppel].
>
> 2. This was done with the specific intent to cause a serious injury.
>
> 3. If the State has proved both elements, the Defendant is guilty of Assault with Intent to Inflict Serious Injury. If the State has proved only element number 1, the Defendant is guilty only of Assault. If the State has failed to

---

testified that two spent bullets were collected inside the Enclave, one of which entered the vehicle through the front passenger door and the other through the rear passenger door. A criminalist from the state crime lab testified that both bullets "had the same class characteristics, . . . the same caliber, [and] had the same rifling specifications on them." However, the bullets were too damaged "to make an identification of those bullets to one another."

prove both elements, the Defendant is not guilty in Count [I, II, or III].

On Count V, intimidation with a dangerous weapon with intent, the jury was told the State had to prove:

> 1. On or about the time period between November 25, 2011 and November 26, 2011 the Defendant shot or discharged a dangerous weapon into a vehicle which was occupied by Janee Jones, Nauriesha Johnson and/or Alexia Klueppel.
>
> 2. A firearm is a dangerous weapon, as explained in Instruction No. 34.
>
> 3. Janee Jones, Nauriesha Johnson and/or Alexia Klueppel actually experienced fear of serious injury and the fear was reasonable under the existing circumstances.
>
> 4. The Defendant shot or discharged the dangerous weapon with the specific intent to injure or cause fear or anger in Janee Jones, Nauriesha Johnson and/or Alexia Klueppel.
>
> If the State has proved all of these elements, the Defendant is guilty of Intimidation with a Dangerous Weapon with Intent. If the State has proved elements 1, 2 and 3 but not 4, the Defendant is guilty of the included offense of Intimidation with a Dangerous Weapon. If the State has failed to prove any one or more of the elements 1, 2 or 3, the Defendant is not guilty of Count V.

Thus, under Count V, the jury was also charged on the lesser included offense of intimidation with a dangerous weapon.

The jury was also given a general aiding-and-abetting instruction, which read as follows:

> All persons involved in the commission of a crime, whether they directly commit the crime or knowingly 'aid or abet' its commission, shall be treated in the same way.
>
> 'Aid and abet' means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. Conduct following the crime may be considered only as it may tend to prove the defendant's earlier participation. Mere nearness to, or presence at, the scene of the crime, without more evidence,

is not 'aiding and abetting.' Likewise, mere knowledge of the crime is not enough to prove 'aiding and abetting.'

The guilt of a person who knowingly aids and abets the commission of a crime must be determined only on the facts which show the part he has in it, and does not depend upon the degree of another person's guilt.

If you find the State has proved the Defendant directly committed the crime, or knowingly 'aided and abetted' other person(s) in the commission of the crime, then the defendant is guilty of the crime charged.

The crime charged in Counts I, II, III, IV, and V, requires a specific intent. Therefore, before you can find the Defendant 'aided and abetted' the commission of the crime, the State must prove the Defendant either has such specific intent or 'aided and abetted' with the knowledge the others who directly committed the crime had such specific intent. If the Defendant did not have the specific intent, or knowledge the others had such specific intent, the Defendant is not guilty.

The jury verdict forms for attempted murder and intimidation with a dangerous weapon (both with and without intent) also included a special interrogatory. If the jury found the defendant guilty of any of these crimes, it had to answer the following question:

During the commission of the offense the Defendant represented he was in the immediate possession and control of a dangerous weapon, displayed a dangerous weapon in a threatening manner or was armed with a dangerous weapon.

___Yes ___No

The court submitted this special interrogatory because attempted murder and intimidation with a dangerous weapon are forcible felonies, thus requiring the court follow the procedure set forth in Iowa Rule of Criminal Procedure 2.22(2) and Iowa Code section 902.7.[2]

---

[2]"Where a defendant is alleged to be subject to the minimum sentence provisions of Iowa Code section 902.7, (use of a dangerous weapon), and the allegation is supported by the evidence, the court shall submit a special interrogatory concerning that matter to the jury." Iowa R. Crim. P. 2.22(2). Iowa Code section 902.7 states:

On June 7, the jury reached its verdicts, which were forwarded to the trial judge. On Count I (Jones), the jury found the defendant guilty of assault with intent to inflict serious injury. On Counts II and III (Johnson and Klueppel), the jury found Merrett guilty of assault only. On Count V, the jury found Merrett guilty of intimidation with a dangerous weapon with intent, but answered the special interrogatory that Merrett had *not* "represented he was in the immediate possession and control of a dangerous weapon, displayed a dangerous weapon in a threatening manner or was armed with a dangerous weapon."[3]

At this point, without calling the jury into the courtroom, the trial judge held the following discussion with the prosecutor, defense counsel, and the defendant. The court stated:

> The jury has forwarded to me a verdict, and I'm going to review Count V, Verdict No. 15. It reads: We find the defendant guilty of the crime of intimidation with a dangerous weapon with intent.

> Then the question is: If this is your verdict, you must answer the following interrogatory: During the commission of the offense the defendant represented he was in immediate possession and control of a dangerous weapon, displayed a dangerous weapon in a threatening manner, or was armed with a dangerous weapon. They have checked that no.

---

> At the trial of a person charged with participating in a forcible felony, if the trier of fact finds beyond a reasonable doubt that the person is guilty of a forcible felony and that the person represented that the person was in the immediate possession and control of a dangerous weapon, displayed a dangerous weapon in a threatening manner, or was armed with a dangerous weapon while participating in the forcible felony the convicted person shall serve a minimum of five years of the sentence imposed by law. A person sentenced pursuant to this section shall not be eligible for parole until the person has served the minimum sentence of confinement imposed by this section.

Iowa Code § 902.7.

[3]The jury found Merrett not guilty on Count IV, gang participation, and guilty on Count VI, driving while barred. Those verdicts are not involved in this appeal.

> I find that inconsistent.  I don't think they can answer all of the elements of committing the crime and then answer no.
>
> I'm willing to hear from counsel on how they could answer affirmatively to the crime as to all of the elements being met and then answer no.  I'll give you a few minutes to think about it.  But my concern is I could not accept what appears to be an inconsistent verdict.  Can you?

The defendant's attorney initially responded there was no way to know the jury's thought process.  She indicated it was possible "they were finding this verdict under a theory of aiding and abetting, that perhaps Mr. Merrett was not the shooter but just the driver, and that he did not know until the shooting began that the shooter was in possession of a dangerous weapon."

The judge offered to submit an additional interrogatory to the jury, but defense counsel objected and stated, "I believe that this is the jury's verdict and that we should accept it."  She further argued that the court should treat the negative answer to the special interrogatory as "a substantive equivalent of an acquittal, and that's not something that can be displaced by the Court."

Again, the court proposed submitting an additional interrogatory to the jury, specifically, "Are you making a finding that the defendant is guilty under Count V based upon an aiding and abetting theory?"  Defense counsel once more objected, and the court granted the parties a recess to consider the matter further.  When the parties returned to court over an hour later, they had reached an agreement that "the Court receive the verdicts as they are currently rendered and take no further action."

As Merrett's attorney explained, "I do believe that if the Court were to find the verdicts inconsistent that the Court would have the power, the ability, to send this verdict back to the jury for further deliberations."

She added that she had spoken to Merrett "about the possible outcomes that could result" from the jury receiving a further interrogatory. In particular, as she told her client,

> [T]he jury could leave the verdict as it is; the jury could change its answer to the interrogatory from no to yes, thus imposing a five-year mandatory minimum on Mr. Merrett; or the jury could change its answer to the original question of guilty to not guilty.

Defense counsel further noted that her

> concern is that by sending the verdict back to the jury it sends them an implicit message that it's wrong in some way and would encourage them to change the answer to the interrogatory which, as it is right now, definitely benefits the defendant.

Following her statement, defense counsel then proceeded to question her client on the record as follows:

> MS. SAMUELSON: So, Mr. Merrett, have we discussed all those things?
>
> THE DEFENDANT: Yes.
>
> MS. SAMUELSON: And do you understand that the Court does have the power to send this question back, this verdict back, to the jury for further deliberations?
>
> THE DEFENDANT: Yes.
>
> MS. SAMUELSON: And do you understand that if the verdict were sent back, the jury could change the verdict on the main charge to not guilty?
>
> THE DEFENDANT: Yes.
>
> MS. SAMUELSON: The jury could also change the answer to the special interrogatory from no to yes. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> MS. SAMUELSON: Or the jury could leave its verdict undisturbed and leave it as it is, which right now is guilty to intimidation with a dangerous weapon with intent and no on the firearm question. You understand that?

THE DEFENDANT: Yes.

MS. SAMUELSON: And at this time are you choosing to ask the Court to leave the verdict as it is?

THE DEFENDANT: Yes.

The court observed:

Ms. Samuelson, based upon your discussion with Mr. Merrett, I take it this would be kind of a trial strategy because of the potential adverse effect that you could get by the Court submitting it back to the jury for further consideration.

Merrett's attorney responded, "Yes, Your Honor." She added,

[W]e believe that the risk of sending it back that the jury changing its answer to the interrogatory is more likely than the jury changing its answer on the original question. So that would be a trial strategy decision that I believe is in my client's best interest at this time.

Noting "a consensus between the prosecution and the defense on how to resolve what the Court observes in [the intimidation verdict] to be an inconsistency," the district court stated that it "will simply accept the verdict." At this point, all the verdicts were delivered and accepted in open court.

Merrett filed posttrial motions but did not raise any claim of verdict inconsistency. The district court denied those posttrial motions. On July 20, the court sentenced Merrett to two years imprisonment on Count I, thirty days each on Counts II and III, ten years on Count V, and two years on Count VI, with all the sentences running concurrently except for the sentence on Count VI. Because of the jury's answer to the special interrogatory, a mandatory minimum of five years incarceration was not imposed.

On July 25, Merrett filed a notice of appeal. On appeal, he urged that the guilty verdict on Count V had to be set aside because it was inconsistent with the jury's "no" answer to the special interrogatory on

that count. In addition, for the first time he maintained the guilty verdicts on Counts I, II, and III should be set aside as inconsistent with the answer to the Count V special interrogatory.[4] We transferred the case to the court of appeals.

In a two-to-one panel decision, the court of appeals vacated Merrett's conviction on Count V, finding the special interrogatory answer in direct conflict with the jury's guilty verdict. The court rejected the State's argument that the jury could have found Merrett guilty of intimidation under an aiding-and-abetting theory while answering the special interrogatory in the negative because it did not believe Merrett personally possessed the gun. The court reasoned the aiding-and-abetting instruction would have applied to the entire count, including the special interrogatory. The court of appeals further found that "it was the court's duty not to record this verdict until the jury's intent was understandable." The court declined, however, to direct an acquittal on Count V as requested by Merrett; instead, it remanded for a new trial. The court also did not reach Merrett's inconsistent verdict arguments with respect to Counts I, II, and III, preserving them rather for a possible postconviction relief proceeding.

The dissenting judge on the court of appeals agreed that the guilty verdict on Count V and the "no" special interrogatory answer were inconsistent, but would have affirmed the Count V conviction based on the doctrine of invited error.

Both parties sought further review, and we granted their applications.

---

[4]Merrett conceded that this issue could be raised only by way of ineffective assistance of counsel, since it had never been discussed below.

## II. Standard of Review.

The consequence of a potentially inconsistent jury verdict is a question of law, and accordingly, our review is de novo. *See State v. Halstead*, 791 N.W.2d 805, 807 (Iowa 2010) (citing *United States v. Hart*, 963 F.2d 1278, 1280 (9th Cir. 1992), and *State v. Taeger*, 781 N.W.2d 560, 564 (Iowa 2010)). "We review claims of ineffective assistance of counsel de novo." *State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013).

## III. Analysis.

**A. Our Law on Inconsistent Verdicts.** A number of years ago, we decided a case that involved a similar alleged inconsistency. *See State v. Mumford*, 338 N.W.2d 366, 368–69 (Iowa 1983). In *Mumford*, two defendants were accused of committing a robbery using a handgun. *Id.* at 367. They went to trial together. *Id.* For each defendant, the jury was given a marshaling instruction that indicated the defendant "or the person he was aiding and abetting" had to have been armed with a dangerous weapon in order to be found guilty of robbery in the first degree. *Id.* at 367–68. In addition, the special interrogatory under Iowa Code section 902.7 asked as to each defendant, "Did the state of Iowa establish beyond a reasonable doubt that at the time of the commission of the offense the defendant, himself, or a person he was aiding and abetting was armed with a firearm?" *Id.* at 368.

The jury originally indicated on the verdict forms that both defendants were guilty of robbery in the first degree, but answered "no" as to both defendants on the firearm interrogatory. *Id.* Thus, the same kind of alleged inconsistency was present in the *Mumford* verdicts as existed here.

Over Mumford's objection, the district court ordered the jury to reconsider the verdict under Iowa Court Rule 21(6) (now Iowa Rule of

Criminal Procedure 2.22(6)) because it felt "there was a significant and material inconsistency between the general verdict and the jury's answer to the special interrogatory." *Id.* at 368. The court also provided an additional instruction to the jury explaining the inconsistency. *Id.* at 369. Thereafter, the jury returned a verdict indicating both defendants were guilty of robbery in the first degree and answering "yes" for both defendants on the special interrogatory concerning use of a firearm. *Id.*

On appeal, Mumford maintained the trial court had erred when it told the jury to deliberate further and gave the supplemental instruction. *Id.* at 370. We concluded otherwise and upheld the trial court's action:

> In application of rule 21(6) [(now 2.22(6))] to situations where special findings of the jury conflict with the general verdict, we are persuaded that trial courts should have some of the alternatives in criminal cases which Iowa Rule of Civil Procedure 206 [(now rule 1.934)] provides in civil cases. That rule gives the trial court in civil cases the alternatives of (a) accepting the verdict and entering judgment consistent with the special findings, (b) sending the matter back to the jury for further deliberation, or (c) ordering a new trial. While we have substantial doubt that the first alternative should ever be availed of in a criminal trial, we approve use of the latter two in criminal cases. Which of those alternatives is to be adopted in a given case is a matter falling within the sound discretion of the trial court. Nothing in the record suggests that the trial court abused that discretion in ordering further deliberation in the present case.

*Id.* at 370–71.

Here, the district court apparently concluded it had authority under *Mumford* to ask the jury to rectify any inconsistency between the Count V verdict and the special interrogatory answer. But the parties asked the court to allow the existing answers to stand, and the court heeded their request.

In the years following the *Mumford* decision, our court rejected challenges to allegedly inconsistent verdicts in three cases. *See State v.*

*Fintel*, 689 N.W.2d 95, 100–01 (Iowa 2004); *State v. Williams*, 525 N.W.2d 847, 851 (Iowa 1994); *State v. Phanhsouvanh*, 494 N.W.2d 219, 222–23 (Iowa 1992). In all three cases, after close examination of the instructions and the evidence, we concluded the verdicts were not actually inconsistent. *See Fintel*, 689 N.W.2d at 100–01; *Williams*, 525 N.W.2d at 851; *Phanhsouvanh*, 494 N.W.2d at 222–23.

More recently, in *Halstead*, this court returned to the subject of inconsistent verdicts and addressed the matter in some detail. *See* 791 N.W.2d at 807–16. The defendant there had been convicted of assault while participating in a felony, but acquitted of theft in the first degree. *Id.* at 807. The latter was the "only predicate felony in the case as instructed by the court." *Id.* Thus, we had a defendant who had been convicted of the compound crime while being acquitted of the predicate crime. *Id.* at 808. Halstead appealed, arguing the assault while participating in a felony conviction should be set aside. *Id.* at 807. Error preservation was not at issue. The state "concede[d] that the issue of whether an inconsistent verdict may stand ha[d] been preserved." *Id.* at 807 n.1.

We noted that both the United States Supreme Court and a majority of state courts found no legal error when inconsistent verdicts were rendered in these circumstances. *Id.* at 808–11. However, a significant minority of state courts disagreed. *Id.* at 811–12. We also noted that more recent academic commentary has been critical of the majority approach to inconsistent verdicts, "particularly in the context of legal inconsistency caused by conviction of a compound felony and acquittal of the potential underlying predicate felony." *Id.* at 813–14.

We sided with the view that inconsistent verdicts in a compound offense situation amount to legal error. *Id.* at 815. "Pursuant to our

power to supervise Iowa courts," we concluded that "a criminal conviction of a compound offense cannot stand when the defendant has been acquitted of the underlying predicate offense." *Id.* at 806. We emphasized "the lack of reliability of jury verdicts when compound inconsistency is present." *Id.* at 815. We also explained that constitutional undercurrents were present. *Id.* Accordingly, we found that Halstead's conviction on the compound felony had to be reversed. *Id.* at 816. Also, we found that double jeopardy and collateral estoppel principles barred Halstead's *retrial* on the compound felony. *Id.* In short, the inconsistency was resolved by the defendant's acquittal on both offenses. *Id.*

**B. Applying that Law to the Present Case.** Both Merrett and the State frame their arguments to us against the backdrop of these precedents. Merrett insists that *Halstead* controls and that the district court erred in accepting inconsistent verdicts. In this respect, Merrett agrees with the court of appeals decision. But Merrett goes further and urges that under *Halstead*, principles of double jeopardy and collateral estoppel bar his retrial on Count V. To this extent, he disagrees with the court of appeals decision and has asked for further review from this court.

The State, meanwhile, argues the verdicts are not inconsistent. It maintains that the verdict forms and instructions here, unlike in *Mumford*, "did not adequately communicate to the jury that [the defendant] could be held responsible for the gun enhancement under the aiding-and-abetting theory." Thus, a jury that had reasonable doubt as to whether Merrett personally discharged the firearm could have found him guilty of Count V on the theory that, *at a minimum*, he had aided and abetted his passenger in discharging the firearm. At the same time,

the jury would have answered the special interrogatory in the negative, reasoning that the aiding-and-abetting theory of liability only applied to the overall *crime*, not to the *enhancement*.

The State also argues that even if the verdicts are inconsistent, the doctrine of invited error applies, as found by the dissenting judge on the court of appeals. In the State's view, *Halstead* does not preclude a defendant from choosing to accept inconsistent verdicts in lieu of having the verdicts sent back to the jury for further deliberation.

On our review, we believe the verdicts are not inconsistent. We focus on how this case was charged. The aiding-and-abetting instruction, quoted above in full, repeatedly told the jury that an aider-and-abettor in the commission of a "crime" was equally guilty of that "crime." However, it said nothing about the special interrogatory—which did not concern whether the defendant had committed the crime—but whether he had a dangerous weapon when committing it. Also, unlike in *Mumford*, the special interrogatory did not mention aiding-and-abetting either. Thus, a jury receiving the instructions and verdict forms in this case would not necessarily have concluded that aiding-and-abetting could be a basis for answering yes to the special interrogatory.

Indeed, we think a diligent jury would likely have reached the opposite conclusion. A guilty verdict on Count V clearly required a determination that a firearm had been used either by Merrett or by Triplett with Merrett's endorsement. A jury that was doing its best to follow the instructions and verdict forms could well have concluded that the purpose of the special interrogatory was for the jury to provide *additional* information—that is, to indicate whether the defendant beyond a reasonable doubt had *personally* used the firearm, as opposed to having aided and abetted his passenger in doing so. Otherwise, the

special interrogatory would have seemed redundant to the jury. We have a maxim that we try to interpret statutes in a way that avoids rendering parts of them superfluous. *Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 520 (Iowa 2012); *State v. Keutla*, 798 N.W.2d 731, 734 (Iowa 2011). It is reasonable to give jurors credit for following a similar approach.

In short, the jury was not told it could find a firearm enhancement where the defendant did not personally possess or use the gun. This aspect of the charge was to the defendant's benefit. *See State v. Sanders*, 280 N.W.2d 375, 377 (Iowa 1979) ("[N]ot only the offender who holds the gun but also his aiders and abettors come within section 902.7."). The instructions as given became the law of the case. *See State v. Fountain*, 786 N.W.2d 260, 262 (Iowa 2010); *Mumford*, 338 N.W.2d at 370. As we evaluate the jury's determinations under Count V, both on the general verdict and the special interrogatory, we find no inconsistency.

As we explained in *Fintel*, "If jury verdicts are to be examined for inconsistency, the test to be applied is whether the verdict is so logically and legally inconsistent as to be irreconcilable within the context of the case." 689 N.W.2d at 101.[5]

Finding no error in the court's acceptance of both the Count V general verdict and the jury's answer to the special interrogatory, we do not reach the State's argument that the doctrine of invited error applies. *See, e.g., State v. Canas*, 571 N.W.2d 20, 23 (Iowa 1997) (applying the

---

[5]We have also said before in a criminal case that

all reasonable presumptions are in favor of the general verdict. Nothing is presumed in aid of the special finding. If the general verdict thus aided is not in irreconcilable conflict with the special finding the former must stand.

*State v. Propps*, 190 N.W.2d 408, 411 (Iowa 1971) (internal quotation marks omitted) (finding "no vitiating inconsistency" in the jury's answers).

principle of invited error); *Jasper v. State*, 477 N.W.2d 852, 856 (Iowa 1991) (same); *see also* Eric L. Muller, *The Hobgoblin of Little Minds? Our Foolish Law of Inconsistent Verdicts*, 111 Harv. L. Rev. 771, 833–34 (1998) (discussing giving the defendant the option of accepting inconsistent verdicts).  By the same token, we do not reach Merrett's argument that error not only requires the Count V verdict to be set aside, but also bars a new trial.  *See Halstead*, 791 N.W.2d at 816.

We believe our decision also forecloses any claim that the verdicts on Counts I, II, and III are inconsistent with the answer to the Count V special interrogatory, as argued by Merrett on appeal.  However, we do not address other possible ineffective-assistance-of-counsel claims.

**IV. Conclusion.**

For the foregoing reasons, we vacate the decision of the court of appeals and affirm Merrett's convictions and sentences.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**