## IN THE COURT OF APPEALS OF IOWA

No. 13-0801
Filed June 11, 2014

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**TROY ANDREW WILLIAMS,**
      Defendant-Appellant.

_____

      Appeal from the Iowa District Court for Scott County, Mark D. Cleve, Judge.

      A defendant appeals his conviction for conspiracy to commit a non-forcible felony. **AFFIRMED.**

      Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

      Thomas J. Miller, Attorney General, Tyler Buller, Assistant Attorney General, Michael J. Walton, County Attorney, and Amy Devine, Assistant County Attorney, for appellee.

      Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

Troy Williams appeals his conviction for conspiracy to commit a non-forcible felony.  He argues his trial counsel provided ineffective assistance when she failed to specifically challenge the State's proof Troy agreed to participate in a plan to take money from his brother's estranged girlfriend.  Because the State produced evidence sufficient to support his conspiracy conviction, he suffered no prejudice from counsel's failure to move for judgment of acquittal on that element.  Accordingly, we affirm.

## I.    Background Facts and Proceedings

On the evening of October 7, 2012, Brittany Hamilton drove from her house in Davenport to her job as an exotic dancer in Cedar Rapids.  She left her two children in the care of Brian Williams,[1] her boyfriend of five years.  Brian lived in her house, even though their relationship was strained.   Brian's younger brother, Troy, and Troy's girlfriend, Emma Beadel, stayed in Brittany's converted garage.  A third Williams brother, Travis, also spent time at Brittany's house.

Brittany left work at 2:00 a.m. on October 8 and drove home, calling Brian while she was en route.  When she arrived back in Davenport, someone wearing a ski mask attacked her as she was walking toward her house.  Her attacker grabbed her around her neck and wrapped duct tape around her head.  Brittany testified she heard more than one voice. They told her to "shut up" as she was crying.  They put her in a car, went through her purse, and asked her where she kept her safe.  Brian had suggested Brittany buy a safe to secure her cash; she

---

[1] Because this case involves three brothers sharing the last name Williams, we will refer to them by their first names.

took his advice and had $12,000 stored in the safe at the time of the abduction. She told the attackers the safe was beneath her bathroom sink. The attackers left for about five minutes, then returned to the car and began to drive. The men drove her to an industrial area near the Flying J truck stop and dumped her out of the car.

At that remote location, the men kneed Brittany in the stomach, hit her repeatedly with a hard object, and shot her in the leg. The attackers then left. Brittany was able to rip the duct tape off her eyes and run to the gas station. Inside, she found Scott County sheriff's deputies. They called an ambulance and began an investigation.

The investigation uncovered that Brian wanted to "get Brittany" because she had "messed up real bad" by seeing another man. Travis recalled Brian saying they "were going to do something to Brittany that night." Brian also informed Travis that they would divide the money stolen from Brittany. Travis testified Brian planned the crimes for about a week before the October 8 attack. Travis took the night off work to participate. Emma overheard Brian talking with Troy about the plan in the kitchen on the morning of October 7.

When originally interviewed by Davenport police, Troy said he played video games until about 10:15 the night of the attack, then went to sleep and did not hear anything until the police arrived at Brittany's residence. He changed his story in a later interview, saying he went to Wal-Mart around 10:00 p.m., but then decided not to shop, drove home, and went to bed around 11:00 p.m.

Emma, Troy's girlfriend, testified she came over at 10:00 p.m. to see him but he was "in and out" of the garage apartment all night. She also heard someone come to the door and ask Troy "if he was ready" and then Troy left. Another housemate, Suless Young, told officers she saw all three Williams brothers at the house that night. She saw them just before 11:00 p.m. and again around 1:00 a.m. Travis testified he called Troy's phone at 12:45 a.m., a time when Troy told police he was sleeping.

The police later found Brittany's safe in her yard. It had been opened using the combination that only she and Brian knew. Brian fled the jurisdiction and could not be found. The county attorney offered immunity to Travis in exchange for his testimony. His information led police officers to a storm sewer near Brittany's house where they found ski masks and the gun used to shoot the victim. Travis testified Brian recruited cousins and friends to carry out the plan and bought ski masks, gloves, and duct tape to prepare.

Emma testified a few days before the crime Troy told her about a plot to steal from Brittany. Emma and Troy also discussed buying a house; Troy told her "he had an idea of coming up with money to make that happen." According to Emma, Troy and his brothers planned to set up Brittany to be arrested by planting pills in her car and in her absence they would steal cash from her house.

On January 9, 2013, the State charged Troy by trial information with conspiracy to commit a non-forcible felony, a class "D" felony, in violation of Iowa Code sections 703.1 and 706.3 (2011). The State also alleged Troy was subject to the habitual offender sentencing enhancements. A jury trial began on April 1,

2013. The jury returned a verdict of guilty. Troy stipulated he was an habitual offender. At the sentencing hearing on May 9, 2013, the district court ordered Troy to serve a term of imprisonment not to exceed fifteen years. The court also ordered him, pursuant to section 902.8, to serve a mandatory minimum sentence of three years before being eligible for parole. Troy now appeals.

## II.     Standards of Review

We review claims of ineffective assistance of counsel de novo.[2] *State v. Merrett*, 842 N.W.2d 266, 273 (Iowa 2014). To establish his claim, Troy must demonstrate his trial counsel failed to perform an essential duty and prejudiced resulted. *See State v. Hopkins*, 576 N.W.2d 374, 378 (Iowa 1998); *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires Troy to show it was reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *See Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Strickland*, 466 U.S. at 694).

We usually preserve claims of ineffective assistance for postconviction relief proceedings so the defendant can develop a record and the attorney accused of a deficient performance can defend his or her actions. *State v. Biddle,* 652 N.W.2d 191, 203 (Iowa 2002). But if the record is adequate, we may

---

[2] Troy's trial counsel moved for a judgment of acquittal at the close of the State's case and again at the close of all the evidence, but failed to specify which elements of the crime were not supported by sufficient evidence. *See State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996) (requiring specificity in acquittal motion). The district court denied both motions. Because his attorney did not preserve error on the sufficiency challenge, Troy raises the claim as ineffective assistance. *See State v. Soboroff*, 798 N.W.2d 1, 8 (Iowa 2011).

resolve the claim on direct appeal. *State v. Johnson,* 784 N.W.2d 192, 198 (Iowa 2010). In this case, we see no reason to delay in ruling on the issue.

A jury's verdict is binding if its findings are supported by substantial evidence. *State v. Leckington*, 713 N.W.2d 208, 213 (Iowa 2006). Evidence is substantial if it can convince a rational trier of fact a defendant is guilty beyond a reasonable doubt. *Id.* When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, including legitimate inferences and presumptions which may fairly and reasonably be deduced from the evidence in the record. *Id.*

## III.    Analysis

The jury determined the State proved beyond a reasonable doubt all of the following elements of conspiracy to commit a theft:

> On or about the 8th day of October 2012, [Troy Williams] agreed with Brian Williams, Jamar Jackson, Isiro Barajas, or Jeremy Garvin that one or more of them would:
> A. commit a theft, or solicit another to commit a theft; or
> B. attempt to commit a theft.
> 2. [Troy Williams] entered into the agreement with the intent to promote or facilitate the theft.
> 3. [Troy Williams], or Brian Williams, or Jamar Jackson, or Isidro Barajas, or Jeremy Garbin committed an overt act.
> 4. Brian Williams, Jamar Jackson, Isidro Barajas and Jeremy Garvin were not law enforcement agents investigating the theft or assisting law enforcement agents in the investigation when the conspiracy began.

The jury instructions defined "solicited" as "have commanded, begged, or to have otherwise attempted to convince someone to do something." The court instructed the jury that to have "entered into an agreement" Troy and the co-

conspirators must have "c[o]me to a mutual understanding the theft would be attempted or committed."

A conspiracy is a "criminal contract" where at least two people have a meeting of the minds as to carrying out illegal activity. *See State v. Kern*, 831 N.W.2d 149, 159 (Iowa 2013). A tacit understanding is enough and the agreement can be inferred from the circumstances or the conduct of the conspirators. *Id.* But the circumstantial evidence of an agreement must amount to more than suspicion and must be based on more than one party's mere presence or general association with conspirators. *Id.*

On appeal, Troy argues the State did not prove he participated in the conspiracy. Troy emphasizes testimony from his brother Travis that as far as he knew Troy was not involved in Brian's plan to exact revenge on Brittany by abducting and assaulting her. In response, the State points to testimony from Travis that Troy did drive his brother's car home after dropping off Travis and Brian, who picked up the van used in the abduction. The State further argues even if Troy can distance himself from the assault and kidnapping, he was charged with and convicted of conspiracy to commit a non-forcible felony—the theft of the money in Brittany's safe. The State contends it offered substantial evidence Troy engaged in a plot to steal from Brittany, even if he did not agree in advance to the assault or robbery.

We conclude the record contains substantial evidence Troy entered into a "criminal contract" to take cash from Brittany. Emma testified that, days before the attack, Troy told her she did not have to worry about money and revealed to

her a plan to steal cash from Brittany. Travis told the jury the plan to rob Brittany was formed a week in advance and Brian promised participants a share of the proceeds. It was up to the jury whether to believe Emma and Travis. The "credibility of witnesses is for the factfinder to decide except those rare circumstances where the testimony is absurd, impossible, or self-contradictory." *State v. Neitzel*, 801 N.W.2d 612, 624 (Iowa Ct. App. 2011).

The State was not required to prove Troy knew all of the details of the conspiracy. *See Blumenthal v. United States*, 332 U.S. 539, 557 (1947) (holding "the law rightly gives room for allowing the conviction of those discovered [participating in a scheme] upon showing sufficiently the essential nature of the plan and their connections with it, without requiring evidence of knowledge of all its details or of the participation of others"). It was enough to offer testimony showing Troy agreed to his brother's scheme to take Brittany's cash and entered into that agreement intending to promote the theft, and he or another of the conspirators committed an overt act to further the theft.

On this record, Troy cannot show he was prejudiced by his attorney's failure to be more specific in the motion for judgment of acquittal.

**AFFIRMED.**