**STATE of Iowa, Appellee,**

v.

**Kevin Lamont WILLIAMS, Appellant.**

**STATE of Iowa, Appellee,**

v.

**Michael E. COLEMAN, Appellant.**

Nos. 93–1814, 93–1670.

Supreme Court of Iowa.

Dec. 21, 1994.

Patrick C. Peters, Iowa City, for appellant Kevin Lamont Williams.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Asst. Appellate Defender, for appellant Michael E. Coleman.

Bonnie J. Campbell, Atty. Gen., Bridget A. Chambers, Asst. Atty. Gen., J. Patrick White, County Atty., and Anne Lahey, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

CARTER, Justice.

These are separate appeals by two defendants tried jointly on a single trial information charging them with murder in the first degree. They were convicted of lesser included offenses. Both convictions stemmed from the same incident. The facts and proceedings are the same in both cases, so that we deem it expedient to decide both appeals in a single opinion.

Defendants were jointly charged by trial information with first-degree murder in the death of Ryan Wagehoft. The original trial information also jointly charged Tommy George McCune and Otis Penelton with the alleged crime. The trial information was later amended to eliminate McCune and Penelton after those defendants pleaded guilty to lesser offenses. Defendant Williams and defendant Coleman were tried jointly, and the jury convicted Coleman of second-degree murder and convicted Williams of voluntary manslaughter. We now affirm the judgments that were entered on those verdicts.

The facts giving rise to these criminal prosecutions include the following. Defendant Williams had purchased drugs from one Ryan Henry of Iowa City and owed him a debt as a result of that transaction. After several weeks of seeking payment, Henry gave Williams a deadline of March 19, 1993. He informed Williams that if payment was not made by that time he would turn Williams' name over to people higher up on the drug-supply ladder for appropriate action.

On March 19, 1993, defendant Williams and defendant Coleman, together with Tommy McCune and Otis Penelton, went to Ryan Henry's mobile home in Iowa City. These four individuals possessed two loaded handguns among them. The lights were on when they arrived, but were later turned off. Ryan Henry and another resident of the mobile home, Ryan Wagehoft, were inside watching a basketball game on television with several friends.

The Williams–Coleman group honked the horn of their car several times and then disembarked and began beating on the door and windows of the mobile home. At least one window was broken. Williams told Penelton, who possessed one of the handguns, to give it to someone who would use it. Penelton then gave the gun to Coleman.

Eventually, Ryan Wagehoft stepped out of the mobile home armed with a golf club. At this time, defendant Coleman fired a shot from one of the handguns, fatally wounding Wagehoft. Other facts that bear on the issues presented on this appeal will be discussed in connection with the points of law raised by the parties.

## I. *Coleman's Appeal.*

Defendant Coleman seeks reversal on the basis that (1) the district court abused its discretion in failing to sever the trial of the charges against him from the trial of the charges against defendant Williams, and (2) he was unduly prejudiced by an improper argument made by the prosecutor in summation.

■ A. *The severance issue.* In urging that his trial should have been severed from that of Williams, defendant Coleman relies on the criteria set forth in *State v. Clark,* 464 N.W.2d 861 (Iowa 1991). Those criteria suggest that severance may be warranted by any of the following factors: (1) if admission of evidence in a joint trial would have been inadmissible and prejudicial if a defendant was tried alone, (2) if a joint trial prevents one defendant from presenting exculpatory testimony of a codefendant, (3) if consolidation will produce a trial of such complexity and length that the jury will be unable to effectively compartmentalize the evidence against each defendant, and (4) if defenses presented by different defendants conflict to the point of being irreconcilable and mutually exclusive. *Id.* at 863–64.

■ Defendant Coleman bases his entitlement to a separate trial on the first element listed in the four *Clark* factors. He argues that evidence was admitted concerning several statements made by Kevin Williams outside the mobile home where the killing took place. Coleman asserts that the statements would have been inadmissible hearsay if he had been tried by himself. We disagree.

The statements upon which defendant Coleman relies were not offered for the truth of the matters asserted but rather for the light these conversations by and between joint criminal participants would shed on the nature of the crime. With respect to Coleman, there was no issue concerning the fact that he was the party who had fired the fatal shot. He testified to that fact at trial but claimed self-defense and lack of intent to injure Wagehoft. The conversations of other participants at the crime scene were relevant to the issue of how and why Coleman obtained the gun and his intentions concerning its use. They also bear on the issue of premeditation, deliberation, and malice on Coleman's part. They would have been admissible if he had been tried alone. *See State v. Baker*, 293 N.W.2d 568, 574–75 (Iowa 1980) (coparties' declarations relating to purpose of joint criminal activity admissible as nonhearsay against joint participant). We find that defendant Coleman's argument for granting separate trials is without merit.

■ B. *The claim of improper summation.* When replying to defendant Coleman's summation to the jury, the assistant county attorney who prosecuted the case invited the jury to try out the alleged murder weapon, which was an exhibit placed in evidence, for purposes of ascertaining that it took a great deal of pressure on the trigger to fire the weapon. Defendant Coleman asserts, consistent with the bill of particulars approved by the trial court, that the prosecutor in issuing this invitation pointed a gun in the direction of the jury and pulled the trigger, causing the hammer to fall.

The degree of difficulty in pulling the trigger on the alleged murder weapon had been made an issue in the case and was highlighted by matters stated in the summation by Coleman's counsel. Consequently, we believe the prosecutor's invitation to the jury to test the exhibit was not improper. Nor would it have been improper for the prosecutor to provide a simple demonstration of the working mechanism of the gun. *See State v. Pepples*, 250 N.W.2d 390, 396 (Iowa 1977) (counsel may make reasonable display of exhibits in evidence to illustrate issues in contention). Unfortunately, as confirmed by the

bill of particulars approved by the trial court, the weapon with which the prosecutor made this demonstration was not the one that Coleman had allegedly fired. There were two handguns admitted as trial exhibits, and the prosecutor simply picked up the wrong one.

Although the prosecutor's confusion over the guns was unfortunate, it does not warrant a reversal of Coleman's conviction. It appears that it was unintentional. Because both guns had been placed in evidence and were available to the jury under proper identification as to which gun was which, we conclude that it was highly unlikely this miscue by the prosecutor served to prejudice the defendant in any material manner.

■ We separately consider the propriety of the prosecutor's action in pointing a gun in the direction of the jurors. Although the bill of particulars is not precise on the details of this alleged occurrence, the State does not deny the defendants' assertions concerning what took place. We strongly condemn the pointing of a firearm in the direction of any living person for purposes of carrying out a demonstration in a civil or criminal proceeding. It is a manifest departure from basic gun safety requirements as well as breach of common etiquette.

Notwithstanding our view concerning the prosecutor's ill-advised demonstration, it is not a prosecutor's misconduct that entitles a defendant to a new trial. It is the resulting prejudice, if any, that prevents the trial from being a fair one. *State v. Anderson*, 448 N.W.2d 32, 33 (Iowa 1989); *State v. Webb*, 244 N.W.2d 332, 333 (Iowa 1976). The party claiming prejudice bears the burden of establishing that the act complained of deprived the defendant of a fair trial. *State v. Bishop*, 387 N.W.2d 554, 561 (Iowa 1986).

The incident of which Coleman now complains, although clearly improper, does not, in our opinion, warrant a reversal of his conviction. It was a less serious breach of professional standards than the firearm demonstration that was considered by this court in *Anderson*, 448 N.W.2d at 33. We determined in that decision that within the context of the entire trial the prosecutor's actions

were unlikely to have had a prejudicial effect on the jury's decision. We reach a similar conclusion concerning Coleman's conviction.

## II. *Williams' Appeal.*

Defendant Williams seeks reversal on the basis that (1) the elements of voluntary manslaughter were not supported by substantial evidence, (2) his conviction of voluntary manslaughter as an aider and abettor was contrary to the trial court's instructions, and (3) he was unduly prejudiced by an improper argument made by the prosecutor in summation.

■ A. *Whether the voluntary manslaughter conviction was permissible under the evidence and the trial court's instructions.* Defendant Williams urges that his conviction for voluntary manslaughter is not sustainable because, under either an objective or subjective standard, there was no evidence that Coleman, as the principal perpetrator, or Williams, as an aider and abettor, acted with irresistible passion resulting from serious provocation. This argument assumes that provocation is an element of the voluntary manslaughter offense. It is not.

In *State v. Taylor,* 452 N.W.2d 605 (Iowa 1990), we held that a person commits voluntary manslaughter when that person causes the death of another person under circumstances that would otherwise be murder were it not for the existence of provocation. *Id.* at 606–07. For that reason, if the elements of murder are supported by substantial evidence, an erroneous determination that provocation exists is not reversible error because it is error that favors the accused. *Id.* That is the situation in which Williams is placed in seeking relief on the basis that the element of provocation is lacking.

■ The present case differs from *Taylor* only in the fact that the defendant in that case was the principal perpetrator, and here, the defendant is an aider and abettor. That distinction makes no difference with respect to the role of provocation in a voluntary manslaughter conviction. We do not agree with Williams' contention that there is a fatal inconsistency between the verdicts finding the principal perpetrator guilty of murder in the second degree and the aider and abettor only guilty of manslaughter. There is no inconsistency here. Our cases have consistently held that an aider and abettor must personally act with malice in order to be guilty of murder and the malice attributable to the principal perpetrator is not automatically imputed to an accomplice. *See State v. Brant,* 295 N.W.2d 434, 436–37 (Iowa 1980); *State v. Gilroy,* 199 N.W.2d 63, 67 (Iowa 1972); *State v. Griffin,* 218 Iowa 1301, 1309–10, 254 N.W. 841, 845 (1934); *see also State v. Lott,* 255 N.W.2d 105, 109 (Iowa 1977). Consequently, it is a rational explanation for the present verdicts that the jury could have determined that Coleman acted with malice and Williams did not.

■ Finally, we reject Williams' argument that the verdict finding him guilty of voluntary manslaughter was not permissible under the marshaling instruction for that offense. This argument refers to the fact that the marshaling instruction on Williams, as an aider and abettor, required a finding that Coleman was guilty of manslaughter. Because Coleman was in fact convicted of second-degree murder, Williams argues that this condition of the marshaling instruction was not satisfied.

A fair reading of the trial court's marshaling instruction convinces us that what the jury was in fact required to find was that Coleman had committed the elements of manslaughter and was aided and abetted by Williams. That requirement was satisfied because the elements required to convict Coleman of second-degree murder necessarily included the elements of manslaughter. Williams' conviction of voluntary manslaughter was supported by the evidence, was permissible under the trial court's instructions, and was not the product of inconsistent verdicts.

B. *The claim of improper summation.* As an alternative argument for a reversal of his conviction, defendant Williams urges that he was unduly prejudiced by an improper argument made by the prosecutor in summation. Part of this complaint relates to the same demonstration with the gun of which Coleman complained. We reject that claim

by Williams for the same reasons that we rejected Coleman's similar contention.

 Other matters complained of by Williams are the prosecutor's comment on his relationship with a sixteen-year-old girl and references made to the possibility of a drive-by shooting at the mobile home where Wagehoft was killed. The references to the girl related to a telephone call that was part of the relevant chronology surrounding the killing. The prosecutor did not elaborate on the relationship between Williams and the girl. We find that the subject matter of those remarks did not go beyond proper comment on the evidence. Similarly, when taken in context, the reference made to a possible drive-by shooting was offered as a hypothetical scenario that might have developed if, when the defendants arrived at the mobile home, the occupants thereof were outside rather than inside. We conclude that these remarks did not go beyond the realm of fair comment. As a whole, we find nothing in the prosecutor's summation that would have warranted the granting of a mistrial.

We have considered all arguments presented and conclude that the judgment of conviction entered with respect to each defendant should be affirmed.

**AFFIRMED ON BOTH APPEALS.**