# IN THE COURT OF APPEALS OF IOWA

No. 13-1672
Filed January 28, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**LASHAWN THURMAN,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.

        Lashawn Terrell Thurman appeals his conviction for possession with intent to deliver. **AFFIRMED.**

        Jack E. Dusthimer, Davenport, for appellant.

        Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, Michael J. Walton, County Attorney, and Kelly Cunningham, Assistant County Attorney, for appellee.

        Considered by Mullins, P.J., and Bower and McDonald, JJ. Tabor, J., takes no part.

**BOWER, J.**

Lashawn Terrell Thurman appeals his convictions for possession with intent to deliver, conspiracy to commit a non-forcible felony, and failure to affix a drug tax stamp. He claims there is insufficient evidence to support his conviction for possession with intent to deliver. Since Thurman only challenges the sufficiency of the evidence as it relates to his intent to deliver charge, we limit our sufficiency review to that charge. He also claims the district court abused its discretion by denying his motion to sever. We find there is sufficient evidence to support his conviction for possession with intent to deliver. We also find the district court did not abuse its discretion in denying his motion to sever. We affirm the ruling of the district court.

## I.    BACKGROUND FACTS AND PROCEEDINGS

On April 19, 2013, members of the Scott County Special Operations Unit (SOU) were investigating the sale of crack cocaine at a motel in Davenport. Karen Cathey was the subject of their investigation. With the assistance of a confidential informant, around midnight a controlled buy of crack cocaine was made from Cathey. The informant remained in the hotel room for quite some time, and the officers became concerned about the informant's safety. After multiple calls from the officers, the informant answered his phone and stated he was fine, but still did not leave the hotel room. The officers then requested a uniformed officer from the Davenport Police Department with a marked car in case the need arose to enter the room.

As the officers debated their next step, they saw Cathey leave the hotel and get into a red sedan with Michigan license plates driven by a female. The officers did not pursue Cathey as they were waiting for the informant to emerge from the room. The officers then decided to enter the room. After obtaining a room key from the front desk, the officers performed a "knock and announce" and entered the room. The officers detained the informant and another man in the room. As the officers applied for a search warrant for the room, Cathey returned to the motel. The SOU detained Cathey and seized her cell phone. During an interview with Cathey, she admitted her suppliers were located at a specific Davenport residence and went by the names "Diamond" and "T.G." Following the interview, the SOU sought and obtained a second search warrant for the residence where Cathey indicated her source was located. The red car with Michigan plates was also parked at the residence.

Around 7:00 a.m. several officers executed the search warrant at the residence. The officers "knocked and announced," and after receiving no response, the officers breached the door. Upon entering the officers found no one on the first floor, but a male identified as Thurman and a female identified as Kristen Murray, standing at the top of the stairs on the second floor. Murray was recognized as the same person seen driving the red car with Michigan license plates. Thurman was dressed only in boxer shorts and Murray wore boxer shorts and a top. The officers detained Thurman and Murray, and separated them for questioning. Two officers went upstairs and searched the two bedrooms at the top of the stairs. One room was virtually empty and appeared to be unoccupied.

The other room contained a mattress and assorted articles of clothing scattered around the room. A pair of jeans was found on each side of the mattress, and a smart phone next to the mattress.

Upon inspecting the jeans with a men's size thirty waist, a police officer found the pockets contained 18.6 grams of crack-cocaine in a clear plastic baggy and $558. The crack-cocaine was packaged in one-tenth of a gram quantities.[1] The other pants were gray in color and consistent with woman's jeans. Those pants contained 4.7 grams of crack cocaine. This cocaine was in the form of individual rocks, but not individually packaged. Near the woman's jeans the officer found a black smart phone in a diamond studded case.

After concluding the investigation upstairs, an officer brought the smart phone to Murray and asked if the phone was hers. She acknowledged the phone was hers but did not have the passcode to unlock the phone. She said Thurman had the code. The officers took the phone to Thurman to unlock. He entered the wrong code four times which locked the phone.

During their investigation the officers found a purse located on the stairs containing $210 in cash and Murray's social security card. They also found three additional cell phones in a box and a digital scale with white residue consistent

---

[1] At trial, Detective Caffery, a detective with SOU and thirteen years of experience dealing with narcotic related crimes, testified crack cocaine is usually sold in one-tenth or three-tenths of a gram quantities. One-tenth sells for twenty dollars and three-tenths sells for fifty dollars. He noted the currency found in the jeans, mostly twenty dollar bills, was consistent with the price of a rock of cocaine. Caffery opined the crack cocaine found in the men's jeans appeared prepared for sale. He testified the quantities were consistent with the amount a mid-level dealer might have.

with cocaine. The officers also searched the red sedan with Michigan plates. They found documents in the glove box addressed to Murray.

After returning to headquarters, an officer used the cell phone found on Cathey to call the contact listed as Diamond; the cell phone with the diamond studded case rang. The officer did the same with a contact labeled T.G.; the other phone found near the bed rang.

Thurman and Murray were jointly charged with possession with the intent to deliver more than ten grams of a schedule II controlled substance, a violation of Iowa Code sections 124.206(2)(d) (2013), 124.401(1)(b)(3), and 703.1 (count I); conspiracy to commit a non-forcible felony, a violation of sections 703.1, 706.1(1)(a) or (b), and 706.3 (count II); and a drug tax stamp violation, a violation of sections 453B.1(3)(d), 453B.3, 453B.7(4), 453B.12, and 703.1 (count III).

Before trial Thurman filed a motion to sever his case from Murray's. Thurman based the motion on the fact he had recently substituted counsel who was not familiar with the case, new counsel had not yet filed a motion to suppress, and Murray had requested a speedy trial. After a hearing, the court found Thurman's lack of cooperation with counsel was the reason little had occurred and denied the motion. Thurman's counsel renewed his motion to sever at trial and argued Murray's defense would shift the blame to Thurman. The court again denied the motion. The jury found Thurman guilty on all counts. Thurman now appeals.[2]

---

[2] Murray does not appeal.

## II.    STANDARD OF REVIEW

We review challenges to the sufficiency of the evidence for errors at law. *State v. Bash*, 670 N.W.2d 135, 137 (Iowa 2003). We will uphold a verdict if substantial evidence supports it. *Id.* Evidence is considered substantial if it would convince a rational fact finder the defendant is guilty beyond a reasonable doubt. *Id.* We review the evidence, including legitimate inferences and presumptions that may fairly be deduced from the evidence, in the light most favorable to the State. *Id.* The State has the burden to prove every fact necessary to constitute the crimes with which the defendant is charged. *Id.* The evidence presented must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture. *Id.*

We review a district court ruling on a motion to sever for an abuse of discretion. *State v. Thornton*, 506 N.W.2d 777, 779 (Iowa 1993).

## III.    ANALYSIS

### A.    Insufficient Evidence

On appeal, Thurman claims the circumstantial evidence presented was insufficient to support his constructive possession conviction. In support of his claim, Thurman points to the lack of incriminating statements, incriminating actions, fingerprints, and the general insufficiency of the evidence.

The State has the burden of proving "every fact necessary to constitute the crime with which the defendant is charged,[3] and the evidence presented

---

[3] Iowa Code section 124.401(1) provides:

[I]t is unlawful for any person to manufacture, deliver, or possess with the intent to manufacture or deliver, a controlled substance, a counterfeit

must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Brubaker*, 805 N.W.2d 164, 171 (Iowa 2011). "Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence." *State v. Adams*, 554 N.W.2d 686, 692 (Iowa 1996).

A person has constructive possession of a controlled substance when the person "has knowledge of the presence of the controlled substance and has authority or right to maintain control of it." *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008). "Constructive possession is recognized by inferences," but "cannot rest simply on proximity to the controlled substance." *Id.* at 193–94 (internal citation omitted).

> Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence. We have also recognized that in controlled-substance prosecutions opinion testimony by law enforcement personnel experienced in the area of buying and selling drugs may be offered as evidence for purposes of aiding the trier of fact in determining intent.
> . . . .
> We have also recognized that the intent to deliver a controlled substance may be inferred from the manner of packaging drugs, large amounts of unexplained cash, and the quantity of drugs possessed.

*State v. Grant*, 722 N.W.2d 645, 647–48 (Iowa 2006)

Here, evidence supporting the verdict Thurman constructively possessed the drugs includes: (1) Thurman was at the top of the stairs and immediately next

---

substance, or a simulated controlled substance, or to act with, enter into a common scheme or design with, or conspire with one or more other persons to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance, a counterfeit substance, or a simulated controlled substance.

to the room containing the drugs when the officers entered the residence; (2) Thurman only wore boxer shorts underwear; (3) upon investigating the room, the officers found a pair of men's jeans immediately next to the mattress—the jeans contained 18.6 grams of crack-cocaine broken-down into sizes commonly used for distribution; (4) no other men were found in the residence; (5) the cash found in the jeans consisted of mostly twenty dollar bills, the common cost of a "rock" of crack-cocaine; (6) the jury was aware the officers were investigating Cathey for selling crack-cocaine, and based on the officers' interview with Cathey, they knew two individuals, T.G. and Diamond, were at the residence; (7) Thurman did not admit to being T.G., but he did lock the cell phone so the officers could not view the phone's contents; (8) the cell phone rang when officers used Cathey's phone to call T.G. These facts, coupled with the expert testimony at trial, were sufficient evidence for a reasonable fact-finder to conclude Thurman possessed the crack cocaine. *See id.* at 648. We also conclude substantial evidence supports the jury's finding that Thurman possessed the crack cocaine with the intent to deliver, in violation of Iowa Code sections 124.206(2)(d), 124.401(1)(b)(3), and 703.1.

### B. Denial of Motion to Sever

On appeal, Thurman claims the district court abused its discretion in denying his motion to sever. "The general rule is defendants who are charged together are tried together. Under [Iowa Rule of Criminal Procedure 2.6(4)(b)], the trial court can order separate trials if a defendant would be prejudiced by a

joint trial." *State v. Truesdell*, 511 N.W.2d 429, 432 (Iowa Ct. App. 1993). Iowa Rule of Criminal Procedure 2.6(4)(b) provides:

> When an indictment or information jointly charges two or more defendants, those defendants may be tried jointly if in the discretion of the court a joint trial will not result in prejudice to one of the parties. Otherwise, defendants shall be tried separately. When jointly tried, defendants shall be adjudged separately on each count.

Severance may be warranted by any of the following factors:

> (1) if admission of evidence in a joint trial would have been inadmissible and prejudicial if a defendant was tried alone, (2) if a joint trial prevents one defendant from presenting exculpatory testimony of a codefendant, (3) if consolidation will produce a trial of such complexity and length that the jury will be unable to effectively compartmentalize the evidence against each defendant, and (4) if defenses presented by different defendants conflict to the point of being irreconcilable and mutually exclusive.

*State v. Williams*, 525 N.W.2d 847, 849 (Iowa 1994).

Thurman claims the court should have granted his motion to sever due to the antagonistic defense[4] raised by his co-defendant.[5] "To cause the type of prejudice that prevents codefendants from obtaining a fair trial, the defenses must be more than merely antagonistic, they must conflict to the point of being irreconcilable and mutually exclusive." *State v. Snodgrass*, 346 N.W.2d 472, 475 (Iowa 1984). "It is well established, however, that the mere presence of conflict, antagonism or hostility among defendants or the desire of one to exculpate

---

[4] Murray claimed the "buy money" found at the residence came from Thurman in exchange for sex with Murray.

[5] Thurman also claims the motion to sever should have been granted due to his right to choose counsel and his right to perform discovery. Neither of these issues was substantiated in Thurman's brief, therefore we decline to consider these issues.

himself by inculpating another are insufficient grounds to require separate trials."

*Id.*

> In denying Thurman's motion to sever, the district court stated:

> > So there's no admission for her that the money was hers. You spent your whole argument, at least Mr. Thurman's argument was wrong place, wrong time, not involved in the drugs, that it wasn't buy money. . . .
> > . . . .
> > Anyway, my point is that this little shred of evidence, you're still—it's not—it's not any more prejudicial to Mr. Thurman in his defense that he wasn't involved in any kind of drug situation, that it wasn't a drug deal, that it wasn't his money. He's not even admitting it was his buy money. He's not even admitting he was there for sex. He's not saying anything, which is his absolute right not to say anything so there's nothing—he's not even—there's nothing—there's just the State's evidence that they believe that the phone was his.
> > There's—it's not—in my mind, that is not prejudicial enough to the defendant to say that this is an inconsistent defense by Ms. Murray. They're still both saying that they were there for something else. They weren't there for drugs. She admitted she was there with him, but they were there for something else, so I'm going to deny the motion to sever.

We agree with the district court that the inconsistent defense raised by Murray—the money in the purse found on the stairs came from Thurman in exchange for sex—does not prejudice Thurman's defense the drugs were not his. The defenses presented by Murray and Thurman are merely antagonistic and do not "conflict to the point of being irreconcilable and mutually exclusive." *Id.* We find the district court did not abuse its discretion in denying Thurman's motion to sever and affirm.

**AFFIRMED.**