# IN THE COURT OF APPEALS OF IOWA

No. 23-1822
Filed August 6, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ARTHUR JAMES FLOWERS,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Linn County, Fae Hoover Grinde, Judge.

A defendant appeals his conviction for voluntary manslaughter, arguing insufficient evidence supports the conviction. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Mary K. Conroy, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered without oral argument by Schumacher, P.J., Sandy, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**VOGEL, Senior Judge.**

A jury convicted Arthur Flowers of voluntary manslaughter for beating and killing a victim. He appeals that conviction, arguing the State failed to prove he was the killer or that the killing resulted from serious provocation. Viewing the evidence in the light most favorable to the State, we find substantial evidence supports the jury's finding that Flowers intentionally struck and killed the victim. We similarly conclude that the jury's erroneous provocation finding worked a benefit to Flowers, which is not reversible error. Thus, we affirm his conviction.

## I.    Factual Background and Proceedings.

On April 2, 2022, Flowers called 911 and reported that a woman was lying on the floor in his upstairs bathroom. On the call, Flowers told the dispatcher he had been asleep in the bathtub, awoke to find the victim lying on the bathroom floor, and that the victim had been using drugs. Yet when first responders and law enforcement arrived, it was immediately clear that the victim had not died of an overdose—she had been brutally beaten and killed.

"There was blood splatter everywhere." An officer described the scene as "one of the worst ones" he had ever encountered. In the bathroom, the victim was lying on her back, with a substantial amount of dried blood on her head, hair, and shirt. The medical examiner observed extensive injuries to her head and neck. She suffered "many skull fractures" and it was "impossible for one single blow to cause all of the[] injuries all at the same time." The shape of many of the injuries indicated a "linear object" like a "pipe or a bat" was used. In some places, the object was used with such force that it caused her scalp to separate from her skull.

As the medical examiner phrased it, the degree of force used was akin to falling "from multiple stories" or "being hit by a semi."

Meanwhile, when law enforcement first arrived on the scene, Flowers repeatedly asked if the victim "was alright." He stated he had been "in the bathtub" and had only woken up "five seconds ago." As officers performed an initial sweep, Flowers tried to engage a neighbor, telling the person that the victim had overdosed. He then stated the victim's father was "going to kill" him. Flowers was also captured on an officer's body camera pulling a rug over a metal rod—a rod that was later confirmed to have the victim's blood on it.

Flowers was transported to the police station, where he was interviewed. During his interview, Flowers again stated he had been asleep in the bathtub and awoke to the victim lying on the floor. Law enforcement also collected DNA samples from his person, which confirmed traces of the victim's blood and DNA were on his hands.

The State charged Flowers with first-degree murder. The case proceeded to trial, where Flowers's counsel argued that Flowers was not the killer and law enforcement ignored other leads. At the close of evidence, the jury was instructed to also consider—as jointly proposed by the parties—a number of lesser offenses, including voluntary manslaughter. After deliberation, the jury convicted Flowers of the lesser offense of voluntary manslaughter. He was sentenced to an indeterminate term of imprisonment not to exceed ten years. He now appeals, arguing insufficient evidence supports his conviction.

## II.     Analysis.

When a defendant disputes the sufficiency of the evidence, we review for legal error.  *State v. Ortiz*, 905 N.W.2d 174, 179 (Iowa 2017).  We will uphold the verdict when "substantial evidence in the record supports it," and we view the evidence "in the light most favorable to the State."  *Id.* at 180 (citation omitted).  Evidence is "substantial" if "it can convince a rational jury that the defendant is guilty beyond a reasonable doubt."  *Id.* (citation omitted).

Voluntary manslaughter is "caus[ing] the death of another person, under circumstances which would otherwise be murder, if the person causing the death acts solely as the result of sudden, violent, and irresistible passion resulting from serious provocation."  Iowa Code § 707.4(1) (2022).  It is expressly "an included offense under an indictment for murder in the first or second degree," and the parties jointly submitted the offense for consideration.  *Id.* § 707.4(3); *see also* Iowa R. Crim. P. 2.6(3) (2022).

To convict Flowers of voluntary manslaughter, the jury was instructed that the State must prove the following elements: (1) Flowers intentionally struck the victim, (2) the victim "died as a result of being struck," and (3) "[t]he striking was done solely by reason of sudden, violent and irresistible passion resulting from serious provocation."  Flowers disputes the first and third elements, arguing the State never proved Flowers was the attacker or that he was provoked into striking the victim.

## A.     Flowers Intentionally Struck the Victim.

Flowers argues that insufficient evidence points to him as the killer, as the evidence showed he had a positive relationship with the victim, his clothes did not

have any traces of the victim's blood, he did not have defensive wounds, and law enforcement ignored the evidence suggesting a third party entered the home and killed the victim. However, viewing the evidence in the light most favorable to the State, and making all reasonable inferences in support of the same, we find substantial evidence supports the jury's finding that Flowers struck the victim.

First, the victim had been dead for some time before Flowers called 911. The physical evidence at the crime scene indicated that both the victim and the scene had been cleaned or adjusted prior to law enforcement's arrival. Parts of the victim's torso were far cleaner than other parts of her body and several items in the scene were splatter-free despite being in the direct path of other blood splatter, indicating they were placed there after the victim was beaten. Given this activity, a jury could reasonably infer that Flowers could have taken time to similarly clean any blood from his clothing or body. Second, Flowers was captured attempting to conceal the murder weapon. The medical examiner confirmed the victim was killed with a pipe or other long object, and Flowers tried to obscure a metal rod covered in the victim's blood while law enforcement was performing an initial sweep of the home. Though Flowers writes off this conduct as innocuous, a jury could reasonably find that Flowers was attempting to cover his tracks. Third, Flowers's explanation of sleeping in the bathtub while the victim was attacked and bludgeoned to death mere feet away is implausible. Finally, the number and force of the blows to the victim undermine any inference that the killing was accidental. Thus, substantial evidence supports the jury's finding that Flowers intentionally struck the victim.

## B.    Provocation.

Flowers next argues that the State failed to prove provocation, and that failure requires us to vacate his conviction and enter judgment for the next-lesser offense.  The State counters that although evidence of provocation was indeed lacking, that does not entitle Flowers to reversal because that erroneous finding worked a benefit to Flowers.  We agree with the State.

In *State v. Taylor*, a defendant was convicted of the lesser offense of voluntary manslaughter following a bench trial.  452 N.W.2d 605, 605 (Iowa 1990).  He disputed his conviction, finding the State failed to prove provocation.  *Id.* at 606.  The supreme court agreed that evidence of provocation was lacking, but disagreed that the defendant was entitled to relief.  *Id.*  The court reasoned that voluntary manslaughter "amounts to murder without the ingredient of malice," and thus the "erroneous finding of provocation merely gave [the defendant] a break to which he was not entitled."  *Id.* at 606–07.  Because the evidence presented during the bench trial could have supported the greater offense of second-degree murder, the court found no reversible error in the defendant's windfall of a lesser conviction.  *Id.* at 607.  So too in *State v. Williams*, 525 N.W.2d 847 (Iowa 1994).  There, following a jury trial, a defendant appealed his conviction of the lesser offense of voluntary manslaughter, similarly arguing the State failed to prove provocation.  *Williams*, 525 N.W.2d at 851.  The supreme court, relying on *Taylor*, found the defendant could not complain of an error that led to a favorable result.  *Id.*

The facts of this case fall squarely within the rationale of *Taylor* and *Williams*.  Because voluntary manslaughter is a killing "under circumstances which would otherwise be murder," *see* Iowa Code § 707.4(1), provocation is best

understood as a partial defense to murder, negating the element of malice, *see Williams*, 525 N.W.2d at 851 ("[I]f the elements of murder are supported by substantial evidence, an erroneous determination that provocation exists is not reversible error because it is error that favors the accused."). The errant finding of provocation here benefitted Flowers by substituting provocation for malice aforethought and preventing his conviction of a greater offense.

As in *Taylor*, the record supports[1] convicting him of the greater offense of second-degree murder but for the erroneous provocation finding.[2] Specifically, juries "may infer malice from the use of a deadly weapon," *State v. Green*, 896 N.W.2d 770, 780 (Iowa 2017), and the metal rod used here could reasonably be viewed as a deadly weapon, *see State v. Lambert*, 612 N.W.2d 810, 815 (Iowa 2000) (finding three-foot metal pipe to be a dangerous weapon); *State v. Mart*, 20 N.W.2d 63, 66 (Iowa 1945) (explaining a weapon is "deadly" if the "manner of its use is likely to produce death" (citation omitted)). So too could malice be inferred from the severity and number of injuries suffered by the victim. *See State v. Poyner*, 306 N.W.2d 716, 718 (Iowa 1981) (finding multiple stab wounds "suppl[ied] strong evidence of malice").

---

[1] We note the State offers the bare assertion that substantial evidence supports convicting Flowers of a greater murder offense, but it's brief does not substantively assess malice aforethought or any other element of the greater murder offenses.

[2] The jury was instructed that second-degree murder requires the State to prove Flowers struck the victim, the victim died as a result, and Flowers acted with malice aforethought.

Thus, the jury's erroneous provocation finding gave Flowers "a break to which he was not entitled." *Taylor*, 452 N.W.2d at 607. Because Flowers has not established reversible error, we affirm.

**AFFIRMED.**